# 19-0631-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOSE CRESPO, AKA Santana, AKA San, RAY JOHNSON, AKA Moreno,
AKA Spoon, JERMAINE STEPHENSON, AKA Half, JOSE PEREZ,
ISMAEL DEVALLE, AKA Ish, MIRIAM GAITHER, GRACE JAEN,
AKA Gracie, AKA Graciela,

*Defendants,*

JOSE RODRIGUEZ, AKA Lazaro,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPENDIX

DANIEL S. NOOTER, ESQ.
*Attorney for Defendant-Appellant*
1380 Monroe Street, NW, # 427
Washington, DC 20010
(202) 215-0512

i

## TABLE OF CONTENTS

**Page**

District Court Docket Entries .................................... A-1

Indictment, filed November 12, 2015 ...................... A-8

Plea Agreement ........................................... A-16

Transcript of Plea Proceedings held before the
    Honorable Eric Vitaliano, dated January 20, 2017   A-27

Transcript of Sentencing held before the Honorable
    Eric Vitaliano, dated February 22, 2019 ............... A-62

Notice of Appeal, filed March 4, 2019 ..................... A-102

Judgment, filed March 13, 2019, Appealed From ..... A-103

A-1

Query   Reports   Utilities   Help   Log Out

APPEAL

# U.S. District Court
# Eastern District of New York (Brooklyn)
# CRIMINAL DOCKET FOR CASE #: 1:15-cr-00576-ENV-1

Case title: USA v. Rodriguez et al

Date Filed: 11/12/2015
Date Terminated: 03/13/2019

Assigned to: Judge Eric N. Vitaliano

**Defendant (1)**

**Jose Rodriguez**
*TERMINATED: 03/13/2019*
*also known as*
Lazaro
*TERMINATED: 03/13/2019*

represented by **Lloyd Epstein**
Epstein & Weil
225 Broadway
Suite 1203
New York, NY 10007
212-732-4888
Fax: 212-732-6703
Email: lepstein@epsteinweil.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

CONSPIRACY TO DISTRIBUTE
NARCOTICS
(1)

VIOLENT CRIME/DRUGS/MACHINE
GUN
(2)

**Disposition**

Receives 188 months imprisonment on
Count 1 and 7 years imprisonment on
Count 2, each term to run consecutively; 5
years supervised release on counts 1 and 2,
each term to run concurrently; $200
special assessment

Receives 188 months imprisonment on
Count 1 and 7 years imprisonment on
Count 2, each term to run consecutively; 5
years supervised release on counts 1 and 2,
each term to run concurrently; $200
special assessment

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

**Disposition**

A-2

| | |
|---|---|
| IMPORTING/MANUFACTURING FIREARMS (3) | Dismissed on Motion of the United States |
| UNLAWFUL TRANSPORT OF FIREARMS, ETC. (4-10) | Dismissed on Motion of the United States |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Kevin M Trowel** USAO - EDNY 271 Cadman Plaza East Brooklyn, NY 11201 718-254-6351 Fax: 718-254-6076 Email: kevin.trowel@usdoj.gov *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* Designation: Government Attorney **Mathew Scott Miller** United States Attorney's Office E.D.N.Y. 271 Cadman Plaza East Brooklyn, NY 11201 (718)254-6075 Fax: (718)254-6076 Email: mathew.miller@usdoj.gov *ATTORNEY TO BE NOTICED* Designation: Government Attorney |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/12/2015 | 1 | SEALED INDICTMENT as to Jose Rodriguez (1) count(s) 1, 2, 3, 4-10, Jose Crespo (2) count(s) 1, 2, Ray Johnson (3) count(s) 1, 3, Jermaine Stephenson (4) count(s) 1, 2, Jose Perez (5) count(s) 1, 2, 3, 12, Ismael Devalle (6) count(s) 1, 11, Miriam Gaither (7) count(s) 1, Grace Jaen (8) count(s) 1. (Attachments: # 1 Criminal Information Sheet, # 2 Sealing Cover Sheet) (Piper, Francine) (Entered: 11/13/2015) |
| 11/19/2015 | 3 | Order to Unseal Indictment as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen.. So Ordered by Magistrate Judge James Orenstein on 11/19/2015. (Lee, Tiffeny) (Entered: 11/20/2015) |

A-3

| | | |
|---|---|---|
| 11/19/2015 | 34 | Minute Entry: for proceedings held before Magistrate Judge James Orenstein: AUSA Kevin Trowel. CJA Atty: Lloyd Epstein. Arraignment as to Jose Rodriguez (1) Count 1,2,3,4-10 held on 11/19/2015. Plea entered by Jose Rodriguez (1) Count 1,2,3,4-10. by Jose Rodriguez Not Guilty on ALL COUNTS. Order of Detention entered. Order of Speedy Trial entered: Start 11/19/15, Stop 12/11/15. (Status Conference set for 12/11/2015 10:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano.) (Tape #3:24-3:27.) (Galeano, Sonia) (Entered: 11/23/2015) |
| 11/19/2015 | 35 | ORDER OF DETENTION as to Jose Rodriguez. (Ordered by Magistrate Judge James Orenstein on 11/19/2015) (Galeano, Sonia) (Entered: 11/23/2015) |
| 11/19/2015 | 36 | ORDER TO CONTINUE - Ends of Justice as to Jose Rodriguez Time excluded from 11/19/15 until 12/11/15. (Ordered by Magistrate Judge James Orenstein on 11/19/2015) (Galeano, Sonia) (Entered: 11/23/2015) |
| 11/19/2015 | 37 | CJA 20 as to Jose Rodriguez: Appointment of Attorney Lloyd Epstein for Jose Rodriguez. (Ordered by Magistrate Judge James Orenstein on 11/19/2015) (Galeano, Sonia) (Entered: 11/23/2015) |
| 11/19/2015 | 38 | CJA 23 Financial Affidavit by Jose Rodriguez. (Galeano, Sonia) (Entered: 11/23/2015) |
| 11/20/2015 | 9 | PRETRIAL MEMORANDUM *in support of the government's request for permanent orders of detention as to certain defendants (redacted)* as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen (Trowel, Kevin) (Entered: 11/20/2015) |
| 11/20/2015 | 12 | PRETRIAL MEMORANDUM *in support of the government's request for permanent orders of detention as to certain defendants (unredacted)* as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen (Trowel, Kevin) (Entered: 11/20/2015) |
| 11/23/2015 | 44 | MOTION for Protective Order by USA as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen. (Attachments: # 1 Proposed Protective Order) (Trowel, Kevin) (Entered: 11/23/2015) |
| 11/24/2015 | 47 | NOTICE OF ATTORNEY APPEARANCE: Lloyd Epstein appearing for Jose Rodriguez (Epstein, Lloyd) (Entered: 11/24/2015) |
| 11/24/2015 | 48 | ORDER, granting 44 Motion for Protective Order as to Jose Rodriguez (1), Jose Crespo (2), Ray Johnson (3), Jermaine Stephenson (4), Jose Perez (5), Ismael Devalle (6), Miriam Gaither (7), Grace Jaen (8). (Ordered by Judge Eric N. Vitaliano on 11/24/2015) (Galeano, Sonia) (Entered: 11/25/2015) |
| 11/25/2015 | 49 | Letter *Regarding Rule 16 Discovery* as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen (Trowel, Kevin) (Entered: 11/25/2015) |
| 12/11/2015 | | Minute Entry for proceedings held before Judge Eric N. Vitaliano:Status Conference as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen held on 12/11/2015. Keven Trowel for USA, Murray Singer standing in for Lloyd Epstein for defendant Jose Rodriguez, Peter Rinaldo for defendant Jose Crespo, Harold Ramsey, Jr. for defendant Ray Johnson, Steven Frankel for defendant Jermaine Stephenson, Murray Singer for |

A-4

| | | |
|---|---|---|
| | | defendant Jose Perez, Joel Cohen for defendant Ismael Devalle, Kannan Sundaram for defendant Miriam Gaither and Philip Katowitz for defendant Grace Jaen. Next Status Conference scheduled for 2/12/2016 @ 2:15 pm. Time excluded. (Court Reporter Nicole Canales.) (Villanueva, William) (Entered: 12/11/2015) |
| 12/22/2015 | 52 | Letter *Regarding Rule 16 Discovery* as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen (Trowel, Kevin) (Entered: 12/22/2015) |
| 02/12/2016 | | Minute Entry for proceedings held before Judge Eric N. Vitaliano: Status Conference as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen held on 2/12/2016. All parties present with counsel. Mr. Katowitz stood in for Mr. Cohen for defendant Ismael Devalle. Next status conference set for 4/8/2016 at 2:30 PM before Judge Eric N. Vitaliano. Time excluded. (Court Reporter: Michele Nardone) (Brucella, Michelle) (Entered: 02/16/2016) |
| 04/08/2016 | | Minute Entry for proceedings held before Judge Eric N. Vitaliano:Status Conference as to Jose Rodriguez, Jose Crespo, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen held on 4/8/2016. Kevin Trowel for USA, Lloyd Epstein for defendant Jose Rodriguez, Paul Rinaldo for defendant Jose Crespo, Joel Cohen standing in for Steven Frankel for defendant Jermaine Stephenson, Murray Singer for defendant Jose Perez, Joel Cohen for defendant Ismael Devalle, Len Kamdang standing in for Kannan Sundaram for defendant Miriam Gaither and Philip Katowitz for defendant Grace Jaen present. Parties engaged in plea discussions. Next Status Conference scheduled for 6/10/20165 @ 10. Time exclude. (Court Reporter Linda Marino.) (Villanueva, William) (Entered: 04/14/2016) |
| 05/31/2016 | 58 | Letter *Regarding Rule 16 Discovery* as to Jose Rodriguez, Jose Crespo, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen (Trowel, Kevin) (Entered: 05/31/2016) |
| 06/01/2016 | 59 | Letter *Jointly Requesting Adjournment of June 10, 2016 Status Conference* as to Jose Rodriguez, Jose Crespo, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen (Trowel, Kevin) (Entered: 06/01/2016) |
| 06/02/2016 | | NOTICE OF HEARING as to Jose Rodriguez, Jose Crespo, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen Status Conference RESCHEDULED for 7/6/2016 11:30 AM in Courtroom 4C South before Judge Eric N. Vitaliano. ORDER EXCLUDING TIME WILL FOLLOW. (Villanueva, William) (Entered: 06/02/2016) |
| 06/17/2016 | 61 | ORDER as to Jose Rodriguez, Jose Crespo, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen, ( Status Conference RESCHEDULED for 7/6/2016 11:30 AM in Courtroom 4C South before Judge Eric N. Vitaliano.) TIME EXCLUDED. Signed by Judge Eric N. Vitaliano on 6/10/2016. (Villanueva, William) (Entered: 06/17/2016) |
| 07/06/2016 | | Minute Entry for proceedings held before Judge Eric N. Vitaliano:AUSA; Kevin Trowel Lloyd Epstein for defendant Jose Rodriguez, Paul Peter Rinaldo for defendant Jose Crespo, Steven Kenneth Frankel for defendant Jermaine Stephenson, Joel S. Cohen for defendant Ismael Devalle and Kannan Sundaram for defendant Miriam Gaither present.Status Conference as to Jose Rodriguez, Jose Crespo, Jermaine Stephenson, Ismael Devalle, Miriam Gaither held on 7/6/2016.Parties continue to |

Eastern District of New York - LIVE Database V6.2.1       https://ecf.nyed.uscourts.gov/cgi-bin/DktRpt.pl?898046528597356-L_1_0-1

| | | |
|---|---|---|
| | | engage in plea discussions.Time exclude. ( Status Conference set for 9/16/2016 10:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano.) (Court Reporter Michele Nardone.) (Dessources, Jose) (Entered: 07/06/2016) |
| 07/19/2016 | 66 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Jose Rodriguez, Jose Crespo, Ray Johnson, Jermaine Stephenson, Jose Perez, Ismael Devalle, Miriam Gaither, Grace Jaen held on April 8, 2016, before Judge Eric N. Vitaliano. Court Reporter/Transcriber Linda A. Marino, Telephone number (718) 613-2484. Email address: lindacsr@aol.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 8/9/2016. Redacted Transcript Deadline set for 8/19/2016. Release of Transcript Restriction set for 10/17/2016. (Marino, Linda) (Entered: 07/19/2016) |
| 08/18/2016 | 71 | Letter *Regarding Rule 16 Discovery* as to Jose Rodriguez, Jermaine Stephenson, Ismael Devalle, Miriam Gaither (Trowel, Kevin) (Entered: 08/18/2016) |
| 09/16/2016 | | Minute Entry for proceedings held before Judge Eric N. Vitaliano:Status Conference as to Jose Rodriguez, Jermaine Stephenson, Ismael Devalle, Miriam Gaither held on 9/16/2016. Kevin Trowel for USA, Lloyd Epstein for defendant Jose Rodriguez, Lloyd Epstein standing in for Steven Frankel for defendant Jermaine Stephenson, Lucas Andino for defendant Ismael Devalle and Kannan Sundaram for defendant Miriam Gaither present. Parties engaged in plea discussions. Next Status Conference scheduled for 11/16/2016 @ 10. Time excluded. (Court Reporter Angela Grant.) (Villanueva, William) (Entered: 09/16/2016) |
| 11/16/2016 | | Minute Entry for proceedings held before Judge Eric N. Vitaliano:Status Conference as to Jose Rodriguez, Miriam Gaither held on 11/16/2016. Kevin Trowel for USA, Lloyd Epstein for defendant Rodriguez and Douglas Morris standing in for Kannan Sundaram for defendant Gaither. Parties engaged in plea discussions. Time excluded. Next Status Conference scheduled for 1/6/2017 @10. (Court Reporter Annette Montalvo.) (Villanueva, William) Modified on 12/7/2016 (Villanueva, William). (Entered: 12/07/2016) |
| 01/20/2017 | 80 | Minute Entry: for proceedings held before Judge Eric N. Vitaliano: AUSA Margaret Gandy standing in for Kevin Trowel. Defense Counsel: Lloyd Epstein. Allocution as to Jose Rodriguez held on 1/20/2017, Change of Plea Hearing as to Jose Rodriguez held on 1/20/2017, Plea entered by Jose Rodriguez (1) Guilty Count 1,2. (Court Reporter Richard Barry.) (Galeano, Sonia) (Entered: 01/23/2017) |
| 01/23/2017 | 81 | MOTION for Release of Funds *Request for Permission to File Interim Voucher* by Jose Rodriguez. (Epstein, Lloyd) (Entered: 01/23/2017) |
| 01/27/2017 | 82 | ENDORSED ORDER ON DOCUMENT #81, granting 81 Motion for Release of Funds as to Jose Rodriguez (1). (Ordered by Judge Eric N. Vitaliano on 1/25/2017) (Galeano, Sonia) (Entered: 01/27/2017) |
| 01/30/2017 | 83 | NOTICE OF ATTORNEY APPEARANCE Mathew Scott Miller appearing for USA. (Miller, Mathew) (Entered: 01/30/2017) |
| 10/11/2017 | | NOTICE OF HEARING as to Jose Rodriguez Sentencing set for 1/19/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) |

| | | |
|---|---|---|
| | | (Entered: 10/11/2017) |
| 12/28/2017 | | NOTICE OF HEARING as to Jose Rodriguez. At defense counsel's request, Sentencing is rescheduled for 3/9/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 12/28/2017) |
| 02/27/2018 | | NOTICE OF HEARING as to Jose Rodriguez. At defense counsel's request, Sentencing is RESCHEDULED for 5/25/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 02/27/2018) |
| 03/05/2018 | 110 | MOTION for Forfeiture of Property by USA as to Jose Rodriguez. (Attachments: # 1 Proposed Order) (Payne, Tanisha) (Entered: 03/05/2018) |
| 05/23/2018 | | NOTICE OF HEARING as to Jose Rodriguez, Jermaine Stephenson Sentencing rescheduled for 6/21/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 05/23/2018) |
| 06/19/2018 | | NOTICE OF HEARING as to Jose Rodriguez Sentencing RESCHEDULED for 6/29/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 06/19/2018) |
| 06/27/2018 | | NOTICE OF HEARING as to Jose Rodriguez, Jermaine Stephenson. Due to a change in the Court's calendar, Sentencing is rescheduled for 9/27/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 06/27/2018) |
| 08/09/2018 | 115 | ORDER DIRECTING FORFEITURE OF PROPERTY as to Jose Rodriguez.Granting 110 Motion for Forfeiture of Property as to Jose Rodriguez (1);(Signed by Judge Eric N. Vitaliano on 8/8/2018) c/m (3) Certified Copies of this Order sent to FSA Paralegal, Yvette Ramos at the US Attys Office-EDNY. (Galeano, Sonia) (Entered: 08/09/2018) |
| 09/18/2018 | 119 | SENTENCING MEMORANDUM SUPPLEMENT by Jose Rodriguez (Epstein, Lloyd) (Entered: 09/18/2018) |
| 09/25/2018 | | NOTICE OF HEARING as to Jose Rodriguez, Jermaine Stephenson. Due to a change in the Court's calendar, Sentencing is rescheduled for 10/26/2018 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 09/25/2018) |
| 09/26/2018 | 120 | SENTENCING MEMORANDUM SUPPLEMENT by Jose Rodriguez (Epstein, Lloyd) (Entered: 09/26/2018) |
| 10/11/2018 | 121 | Certificate of Service by USA as to Jose Rodriguez *Affidavit of publication, legal notice was published on the official government website www.forfeiture.gov, beginning on September 5, 2018 and ending on October 4, 2018.* (Payne, Tanisha) (Entered: 10/11/2018) |
| 10/22/2018 | | NOTICE OF HEARING as to Jose Rodriguez Sentencing RESCHEDULED for 1/11/2019 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 10/22/2018) |
| 01/09/2019 | | NOTICE OF HEARING as to Jose Rodriguez Sentencing RESCHEDULED for 2/22/2019 11:00 AM in Courtroom 4C South before Judge Eric N. Vitaliano. (Villanueva, William) (Entered: 01/09/2019) |

A-7

| 02/21/2019 | 132 | SENTENCING MEMORANDUM by Jose Rodriguez (Epstein, Lloyd) (Entered: 02/21/2019) |
|---|---|---|
| 02/22/2019 | 136 | Minute Entry for proceedings held before Judge Eric N. Vitaliano: Sentencing held on 2/22/2019 for Jose Rodriguez (1), Count(s) 1, 2, Receives 188 months imprisonment on Count 1 and 7 years imprisonment on Count 2, each term to run consecutively; 5 years supervised release on counts 1 and 2, each term to run concurrently; $200 special assessment; Count(s) 3, 4-10, Dismissed on Motion of the United States. (Court Reporter Stacy Mace) (Lee, Tiffeny) (Entered: 03/13/2019) |
| 03/04/2019 | 133 | NOTICE OF APPEAL from 137 Judgment entered 3/13/19 by Attorney for Jose Rodriguez. No fee. Appellant represented by CJA Attorney. Service done electronically. (Epstein, Lloyd) Modified on 3/14/2019 to reflect Judgment, fee status and service (McGee, Mary Ann). (Entered: 03/04/2019) |
| 03/11/2019 | 135 | MOTION for Forfeiture of Property by USA as to Jose Rodriguez. (Attachments: # 1 Proposed Order) (Payne, Tanisha) (Entered: 03/11/2019) |
| 03/13/2019 | 137 | JUDGMENT as to Jose Rodriguez (1), Count(s) 1, 2, Receives 188 months imprisonment on Count 1 and 7 years imprisonment on Count 2, each term to run consecutively; 5 years supervised release on counts 1 and 2, each term to run concurrently; $200 special assessment; Count(s) 3, 4-10, Dismissed on Motion of the United States. The Court recommends that the defendant be placed in a facility as close to NYC as possible. The Court also recommends that the defendant be placed in the 500 hour substance abuse program. So Ordered by Judge Eric N. Vitaliano on 3/12/2019. (Attachments: # 1 Preliminary Order of Forfeiture) (Lee, Tiffeny) (Main Document 137 replaced on 3/15/2019) (Galeano, Sonia). (Entered: 03/13/2019) |
| 03/14/2019 | | Electronic Index to Record on Appeal as to Jose Rodriguez sent to US Court of Appeals 133 Notice of Appeal - Final Judgment, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (McGee, Mary Ann) (Entered: 03/14/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/29/2019 09:04:27 | | | |
| **PACER Login:** | dannooteresq | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:15-cr-00576-ENV |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Exempt% |

A-8

CR 15 - 576

EAG:KMT
F. # 2015R0555

FILED
CLERK

VITALIANO, J.
MANN. M.J.

2015 NOV 12 PH 12: 05

U.S. DISTRICT COURT
EASTERN DISTRICT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JOSE RODRIGUEZ,
    also known as "Lazaro,"
JOSE CRESPO,
    also known as "Santana" and "San,"
RAY JOHNSON,
    also known as "Moreno" and "Spoon,"
JERMAINE STEPHENSON,
    also known as "Half,"
JOSE PEREZ,
ISMAEL DEVALLE,
    also known as "Ish,"
MIRIAM GAITHER and
GRACE JAEN,
    also known as "Gracie" and "Graciela,"

            Defendants.

- - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 922(a)(1)(A), 922(g)(1),
  924(a)(2), 924(a)(1)(D), 924(c)(1)(A)(i),
  924(c)(1)(A)(ii), 924(d), 2 and 3551 et seq.;
  T. 21, U.S.C., §§ 841(b)(1)(A)(i),
  841(b)(1)(B)(iii), 841(b)(1)(C),
  841(b)(1)(D), 846, 853(a) and 853(p); T. 28,
  U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>COUNT ONE</u>
(Heroin, Cocaine Base, Cocaine and Marijuana Distribution Conspiracy)

      1.    In or about and between December 2014 and November 2015, both dates

being approximate and inclusive, within the Eastern District of New York, the defendants

JOSE RODRIGUEZ, also known as "Lazaro," JOSE CRESPO, also known as "Santana" and

"San," RAY JOHNSON, also known as "Moreno" and "Spoon," JERMAINE

STEPHENSON, also known as "Half," JOSE PEREZ, ISMAEL DEVALLE, also known as

2

"Ish," MIRIAM GAITHER, and GRACE JAEN, also known as "Gracie" and "Graciela,"

together with others, did knowingly and intentionally conspire to distribute and possess with

intent to distribute one or more controlled substances, which offense involved (a) a substance

containing heroin, a Schedule I controlled substance, (b) a substance containing cocaine base,

a Schedule II controlled substance, (c) a substance containing cocaine, a Schedule II controlled

substance, and (d) a substance containing marijuana, a Schedule I controlled substance,

contrary to Title 21, United States Code, Section 841(a)(1).

      2.     With respect to the defendants JOSE RODRIGUEZ, also known as

"Lazaro," JOSE CRESPO, also known as "Santana" and "San," RAY JOHNSON, also known

as "Moreno" and "Spoon," JERMAINE STEPHENSON, also known as "Half," JOSE

PEREZ, ISMAEL DEVALLE, also known as "Ish," and GRACE JAEN, also known as

"Gracie" and "Graciela," the amount of heroin involved in the conspiracy attributable to them

as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable

to them, was at least one kilogram of a substance containing heroin; and the amount of cocaine

base involved in the conspiracy attributable to them as a result of their own conduct, and the

conduct of other conspirators reasonably foreseeable to them, was at least 28 grams of a

substance containing cocaine base.

      (Title 21, United States Code, Sections 846, 841(b)(1)(A)(i), 841(b)(1)(B)(iii),

841(b)(1)(C) and 841(b)(1)(D); Title 18, United States Code, Sections 3551 et seq.)

COUNT TWO<br>(Unlawful Use and Possession of Firearms)

      3.     In or about and between December 2014 and November 2015, both dates

being approximate and inclusive, within the Eastern District of New York, the defendants

3

JOSE RODRIGUEZ, also known as "Lazaro," JOSE CRESPO, also known as "Santana" and

"San," JERMAINE STEPHENSON, also known as "Half," and JOSE PEREZ, together with

others, did knowingly and intentionally use and carry one or more firearms during and in

relation to a drug trafficking crime, to wit: the crime charged in Count One, and did knowingly

and intentionally possess such firearms in furtherance of said drug trafficking crime, one or

more of which firearms was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 2 and

3551 et seq.)

### COUNT THREE
(Illegal Dealing in Firearms)

4.     In or about and between December 2014 and November 2015, both dates

being approximate and inclusive, within the Eastern District of New York, the defendants

JOSE RODRIGUEZ, also known as "Lazaro," RAY JOHNSON, also known as "Moreno" and

"Spoon," and JOSE PEREZ, together with others, not being licensed importers, licensed

manufacturers or licensed dealers of firearms, did knowingly and willfully engage in the

business of dealing in firearms.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), 2 and

3551 et seq.)

### COUNTS FOUR THROUGH TEN
(Felon-in-Possession)

5.     On or about the following dates, within the Eastern District of New

York, the defendant JOSE RODRIGUEZ, also known as "Lazaro," having previously been

convicted in a court of a crime punishable by a term of imprisonment exceeding one year, did

4

knowingly and intentionally possess in and affecting commerce the following firearms and

ammunition:

| COUNT | DATE | FIREARMS |
|-------|------|----------|
| FOUR | April 1, 2015 | An ISSC .22 caliber handgun with serial number ABE532 |
| FIVE | April 17, 2015 | A Smith & Wesson revolver with serial number M681-1; a Masterpiece Arms handgun with serial number A7556; a Smith & Wesson revolver with serial number 33K974; a Glock .40 caliber handgun with serial number RLA582; and ammunition |
| SIX | April 22, 2015 | A Norinco SKS rifle with serial number 10258029A and ammunition |
| SEVEN | May 22, 2015 | A Colt .45 caliber handgun with serial number 1895249; a Weihrauch, Hermann revolver with serial number 1064831; a Beretta handgun with serial number 572635; a DPMS Inc. A15 rifle with serial number F176935; and ammunition |
| EIGHT | June 1, 2015 | A Ruger .22 caliber revolver with serial number 264-04104; a Taurus .357 caliber revolver with serial number Q1562492; a Taurus .44 caliber revolver with serial number AL545070 |
| NINE | September 9, 2015 | A Diamondback Arms .380 caliber handgun with serial number ZF5156 and ammunition |
| TEN | September 11, 2015 | A Star, Bonifacio Echeverria .40 caliber Firestar handgun with serial number 2097802 |

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

COUNT ELEVEN
(Felon-in-Possession)

6.      On or about September 9, 2015, within the Eastern District of New York,

the defendant ISMAEL DEVALLE, also known as "Ish," having previously been convicted in

a court of a crime punishable by a term of imprisonment exceeding one year, did knowingly

and intentionally possess in and affecting commerce a firearm, to wit: a Diamondback Arms

5

.380 caliber handgun with serial number ZF5156, and ammunition.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## COUNT TWELVE
(Felon-in-Possession)

7.      On or about April 1, 2015, within the Eastern District of New York, the

defendant JOSE PEREZ, having previously been convicted in a court of a crime punishable by

a term of imprisonment exceeding one year, did knowingly and intentionally possess in and

affecting commerce a firearm, to wit: an ISSC .22 caliber handgun with serial number

ABE532.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE

8.      The United States hereby gives notice to the defendants, that upon their

conviction of the offense charged in Count One, the government will seek forfeiture in

accordance with Title 21, United States Code, Section 853(a), which requires any person

convicted of such offense to forfeit any property constituting, or derived from, any proceeds

the person obtained, directly or indirectly, as a result of such offense, and any property used, or

intended to be used, in any manner or part, to commit, or to facilitate the commission of such

offense.

9.      If any of the above described forfeitable property, as a result of any act or

omission of the defendants:

6

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH TWELVE

10.     The United States hereby gives notice to the defendants charged in Counts Two through Twelve, that upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Section, 924(d) and Title 28, United States Section, 2461(c), which requires the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Sections 922(g) and/or 924, or any violation of any criminal law of the United States.

11.     If any of the above described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

7

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of such defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34
JUN. 85

No. 15-cr-00576-ENV

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*JOSE RODRIGUEZ, et al.,*

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 922(a)(1)(A), 922(g)(1), 924(a)(2), 924(a)(1)(D), 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(d), 2 and 3551 et seq.; T. 21, U.S.C., §§ 841(b)(1)(A)(i), 841(b)(1)(B)(iii), 841(b)(1)(C), 841(b)(1)(D), 846, 853(a) and 853(p); T. 28, U.S.C., § 2461(c))

Foreperson

*A true bill.*

_____

*Filed in open court this* _____ *day of* _____ *A.D. 20* _____

_____ *Clerk*

*Bail, $* _____

_____

*Kevin Trowel, Assistant U.S. Attorney (718) 254-6351*

A-16

AL:KMT
F. # 2015R0555

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

- against -

JOSE RODRIGUEZ,

Defendant.

– – – – – – – – – – – – – – – – –X

PLEA AGREEMENT

15 CR 576 (ENV)

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United

States Attorney's Office for the Eastern District of New York (the "Office") and JOSE

RODRIGUEZ (the "defendant") agree to the following:

1.    The defendant will plead guilty to a lesser-included offense of Count

One and to Count Two of the above-captioned indictment (the "Indictment"), charging

violations of 21 U.S.C. § 846 and 18 U.S.C. § 924(c), respectively.  The counts carry the

following statutory penalties:

Count One: Narcotics Distribution Conspiracy

    a.    Maximum term of imprisonment: 40 years
       (21 U.S.C. § 841(b)(1)(B)).

    b.    Minimum term of imprisonment: 5 years
       (21 U.S.C. § 841(b)(1)(B)).

    c.    Minimum supervised release term: 4 years, maximum
       supervised release term: life, to follow any term of
       imprisonment; if a condition of release is violated, the defendant
       may be sentenced to up to 3 years without credit for pre-release

imprisonment or time previously served on post-release supervision
(18 U.S.C. § 3583(e); 21 U.S.C. § 841(b)(1)(B)).

d.   Maximum fine:  $5,000,000
(21 U.S.C. § 841(b)(1)(B)).

e.   $100 special assessment
(18 U.S.C. § 3013).

f.   Other penalties: criminal forfeiture as set forth in paragraphs 7 through 13 below:
(21 U.S.C. §§ 853(a) and 853(p)).

<u>Count Two: Unlawful Use and Brandishing of a Firearm</u>

a.   Maximum term of imprisonment: life
(18 U.S.C. § 924(c)(1)(A)(ii)).

b.   Minimum term of imprisonment: 7 years
(18 U.S.C. § 924(c)(1)(A)(ii)).

c.   Maximum supervised release term: five years, to follow any term of imprisonment; if a condition of release is violated, the defendant may be sentenced to up to five years without credit for pre-release imprisonment or time previously served on post-release supervision
(18 U.S.C. § 3583 (b) & (e)).

d.   Maximum fine:  $250,000
(18 U.S.C. § 3571(b)(3), (d)).

e.   $100 special assessment
(18 U.S.C. § 3013).

f.   Other penalties: criminal forfeiture as set forth in paragraphs 7 through 13 below:
(18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)).

The sentence imposed on each count must run consecutively.

2.   The defendant understands that although imposition of a sentence in

accordance with the United States Sentencing Guidelines (the "Guidelines" and "U.S.S.G.")

2

is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The Office estimates the likely adjusted offense level under the Guidelines to be 36, which is predicated on the following Guidelines calculation:

<u>Count One: Narcotics Distribution Conspiracy</u>

| | | |
|---|---|---|
| Base Offense Level (§§ 2D1.1(a)(5), 2D1.1(c)(5)) | | 30 |
| Plus: | Organizer or Leader (§ 3B1.1(a)) | +4 |
| Plus: | Use of Fear, Impulse, Friendship, Affection to Involve Another; Involving a Minor; Criminal Livelihood (§ 2D1.1(b)(15)(A), (B), (E)) | <u>+2</u> |
| Total: | | <u>36</u> |

<u>Count Two: Unlawful Use and Brandishing of a Firearm</u>

| | |
|---|---|
| Guidelines sentence (§ 2K2.4(b): | 84 months |

If the defendant clearly demonstrates acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 34 and a range of imprisonment of 188-235 months with respect to Count One, assuming that the

defendant falls within Criminal History Category III. However, because Count Two carries a mandatory consecutive sentence of 84 months' imprisonment, the effective combined Guidelines range is 272-319 months. Furthermore, if the defendant has accepted responsibility as described above, to the satisfaction of the Office, and if the defendant pleads guilty on or before December 30, 2016 an additional one-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an adjusted offense level of 33. This level carries a range of imprisonment of 168-210 months with respect to Count One, assuming that the defendant falls within Criminal History Category III. However, because Count Two carries a mandatory consecutive sentence of 84 months' imprisonment, the effective combined Guidelines range is 252-294 months. The defendant stipulates to the above Guidelines calculation. The defendant agrees that he will not challenge the drug type and quantity set forth in the lab reports.

        3.     The Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement.

        4.     The defendant stipulates and admits that (1) in the course of the narcotics conspiracy to which he is pleading guilty, the defendant possessed one or more firearms in furtherance of the narcotics conspiracy; (2) on or about August 12, 2015, the defendant discharged one such firearm in the direction of an individual with whom the

4

defendant had a dispute over a car; and (3) in or about August 2015, the defendant instructed a coconspirator to discharge another such firearm at individuals driving a car on New York State Route 878 and the coconspirator discharged the firearm.

5.    The defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a combined term of imprisonment of 319 months or below. This waiver is binding without regard to the sentencing analysis used by the Court. The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum. The defendant waives any right to additional disclosure from the government in connection with the guilty plea. The defendant agrees that with respect to all charges referred to in paragraphs 1, 2 and 6(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law. The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

6.    The Office agrees that:

   a. no further criminal charges will be brought against the defendant for his participation in (1) a conspiracy to possess with intent to distribute heroin, cocaine base, cocaine and marijuana in or about and between December 2014 and November 2015, as charged in Count One of the Indictment; (2) using, possessing and brandishing a firearm during and in relation to a drug trafficking crime in or

5

about and between December 2014 and November 2015, as charged in Count Two of the Indictment; (3) discharging a firearm during and in relation to a drug trafficking crime on or about August 12, 2015; (4) discharging a firearm during and in relation to a drug trafficking crime in or about August 2015 on New York State Route 878; (5) illegal dealing in firearms in or about and between December 2014 and November 2015, as charged in Count Three of the Indictment; and (6) being a felon in possession of a firearm in or about and between December 2014 and November 2015, including on the dates specified in Count Four of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the Indictment with prejudice;

and, based upon information now known to the Office, it will

    b.   take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

    c.  make no motion for an upward departure under the Sentencing Guidelines.

If information relevant to sentencing, as determined by the Office, becomes known to the Office after the date of this agreement, the Office will not be bound by paragraph 6(b). Should it be judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including but not limited to the provisions of paragraphs 6(a)-(b).

    7.      The defendant acknowledges that he owns property that is subject to forfeiture as a result of his violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c), as alleged in the Indictment. Pursuant to 18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c), and 21 U.S.C. §§ 853(a) and 853(p), the defendant consents to the forfeiture of all right, title and interest in

the following property seized on or about November 18, 2015 from the defendant's home in

Queens, New York (the "Seized Property"), as any property constituting, or derived from,

any proceeds the person obtained, directly or indirectly, as a result of the defendant's

violation of 21 U.S.C. § 846; any property used, or intended to be used, in any manner or

part, to commit, or to facilitate the commission of, such violation; any firearm or ammunition

involved in or used in any knowing violation of 18 U.S.C. § 924(d)(1); and/or as substitute

assets: (a) one model M68 .38 special handgun with serial number A191997; (b) five rounds

of .38 caliber ammunition; (c) one shoebox containing miscellaneous ammunition; (d) one

iced tea container with a false bottom; (e) one Sentry safe; (f) one Apple iPad, Model A1489,

serial number F9FN1PRFFCM8; (g) one Apple iPad, Model A1219, serial number

GB1014HXZ39; (h) one Toshiba Satellite Laptop, Model C875D-S7105, serial number 2D-

058302R; (i) one Dell Inspiron 1525 Laptop, serial number 4MM52H1; (j) one Dell All-in-

One Computer, serial number JFM5022; (k) one Dell Dimension E310 Computer, serial

number 9178X91; (l) one Samsung cell phone, Model SM-N9100, IMEI 355236030373956;

(m) one LG cell phone, Model LGMS323, serial number 501CYEA822292; (n) one LG cell

phone, Model LG440G, serial number 501CYQX783788; (o) one LG cell phone, Model

LGMS345, serial number 510CYMR608355; and (p) one ZTE cell phone, Model Z970,

serial number 9757A6C3; (q) one ASUS Transformer notebook computer, serial number

E8NOBC095104343.

       8.     The defendant agrees that the Seized Property constitutes any property

constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a

result of the defendant's violation of 21 U.S.C. § 846; any property used, or intended to be

used, in any manner or part, to commit, or to facilitate the commission of, such violation; any firearm or ammunition involved in or used in any knowing violation of 18 U.S.C. § 924(d)(1); and/or as substitute assets, and thus are forfeitable to the United States pursuant to 18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c), 21 U.S.C. §§ 853(a) and 853(p). The defendant consents to the entry of a Preliminary Order of Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure as to the forfeiture of the Seized Property.

9.      The defendant agrees to fully assist the government in effectuating the surrender and forfeiture of the Seized Property to the United States, and to take whatever steps are necessary to ensure that clear title passes to the United States, including the execution of any documents necessary to effectuate the surrender and transfer of title to the United States. The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of the Seized Property in any administrative or judicial proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of the Seized Property. Further, if any third party files a claim to the Seized Property, the defendant will assist the government in defending such claim.

10.      The failure of the defendant to forfeit any monies and/or properties as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a material breach of this agreement. Upon such a breach, the defendant will not be entitled to withdraw the plea, but the Office may bring additional criminal charges against the defendant. Further, if the defendant fails to forfeit the Seized Property, the defendant consents to the forfeiture of

any other property up to the value of the Seized Property, pursuant to 21 U.S.C. § 853(p), the

Federal Debt Collection Procedures Act, or any other applicable law.

          11.     The defendant represents that he will disclose all of his assets to the

United States on the financial statement entitled "United States Department of Justice

Financial Statement" (hereinafter, the "Financial Statement") on or before the date of his

guilty plea and provide a copy, which will be attached hereto as Exhibit A, to Assistant

United States Attorney Tanya Y. Hill, 271-A Cadman Plaza East, Brooklyn, NY 11201. The

defendant agrees that a failure to disclose assets on the Financial Statement and to inform the

government in writing of any material changes up until the time of sentencing constitutes a

material breach of this agreement. Upon such a breach, the defendant will not be entitled to

withdraw the plea, but the Office may bring additional criminal charges against the

defendant. If the government discovers that the defendant owns or holds an interest in any

property that the defendant has an obligation to disclose, but failed to do so before

sentencing, defendant agrees to the summary forfeiture of such property or interest. Should

undisclosed assets which the defendant owns or in which the defendant has an interest be

discovered, the defendant knowingly and voluntarily waives his right to any required notice

concerning the forfeiture of said assets and agrees that said assets shall be forfeited to the

United States pursuant to 18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c), 21 U.S.C. §§ 853(a)

and 853(p), as any property constituting, or derived from, any proceeds the person obtained,

directly or indirectly, as a result of the defendant's violation of 21 U.S.C. §§ 841 and 846;

any property used, or intended to be used, in any manner or part, to commit, or to facilitate

the commission of, such violation; any firearm or ammunition involved in or used in any knowing violation of 18 U.S.C. § 924(d)(1); and/or as substitute assets.

12.     The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of any monies and/or properties forfeited hereunder, including notice set forth in an indictment or information.  In addition, the defendant knowingly and voluntarily waives his right, if any, to a jury trial on the forfeiture of the monies and/or properties forfeited hereunder, and waives all constitutional, legal and equitable defenses to the forfeiture of said monies and/or properties, including, but not limited to, any defenses based on principles of double jeopardy, the Ex Post Facto clause of the Constitution, any statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

13.     The defendant agrees that the forfeiture of the Seized Property is not to be considered payment of a fine, penalty, restitution, or any income taxes that may be due, and shall survive bankruptcy.

14.     This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

15.     Apart from any written proffer agreements, if applicable, no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties.  Apart from any written proffer agreements, if applicable, this agreement

10

A-26

supersedes all prior promises, agreements or conditions between the parties.  To become

effective, this agreement must be signed by all signatories listed below.

Dated: Brooklyn, New York
            _____, 2016

                            ROBERT L. CAPERS
                            United States Attorney
                            Eastern District of New York

By:   _____

             Kevin Trowel
             Assistant United States Attorney

             Approved by:

             _____

             Allon Lifshitz
             Supervising Assistant U.S. Attorney

I have read the entire agreement and discussed it with my attorney.  I understand all of its
terms and am entering into it knowingly and voluntarily.

_____
JOSE RODRIGUEZ
Defendant

Approved by:

_____
Lloyd Epstein, Esq.
Counsel to Defendant

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - X

UNITED STATES OF AMERICA,       : 15-CR-576(EV)
                                :
                                :
                                :
      -against-                 : United States Courthouse
                                : Brooklyn, New York
                                :
                                :
                                : Friday, January 20, 2017
JOSE RODRIGUEZ,                 :
                                :
          Defendant.            :
                                :

- - - - - - - - - - - - X

          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
            BEFORE THE HONORABLE ERIC VITALIANO
        UNITED STATES SENIOR DISTRICT COURT JUDGE

               A P P E A R A N C E S :

For the Government: ROBERT L. CAPERS, ESQ.
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                BY:  MARGARET GANDY, ESQ.
                    Assistant United States Attorney

 For the Defendant:    LLOYD EPSTEIN, ESQ.


Court Reporter:  Richard W. Barry, RPR
                 Official Court Reporter
                 E-mail: rwbarrycourtreporter@gmail.com

          Proceedings recorded by computerized stenography.
          Transcript produced by Computer-aided Transcription.

A-28

```
                    - P L E A -                      2

1          COURTROOM DEPUTY:  Case on the calendar, United

2    States versus Rodriguez, case number 15-CR-576, on for a

3    guilty plea.

4          Will the attorneys please note appearances beginning

5    with the Government.

6          MS. GANDY:  Morning Your Honor, Margaret Gandy

7    standing in for Kevin Trowel for the Government.

8          MR. EPSTEIN:  Lloyd Epstein for Mr. Rodriguez.

9          THE COURT:  Good morning.

10          COURTROOM DEPUTY:  Counsel for both sides are

11    present, including the defendant.

12          THE COURT:  Mr. Epstein, I understand from the

13    announcement of the case, that Mr. Rodriguez intends to change

14    his plea.

15          MR. EPSTEIN:  Yes, Your Honor.

16          First, Mr. Rodriguez has to sign the plea agreement.

17          THE COURT:  Surely.

18          (Pause.)

19          MR. EPSTEIN:  We are ready, Your Honor.

20          THE COURT:  Okay.  Let us begin with Mr. Villanueva

21    swearing in Mr. Rodriguez.

22    JOSE RODRIGUEZ, having been first duly sworn, testified as

23    follows:

24          THE COURT:  Morning Mr. Rodriguez.

25          THE DEFENDANT:  Good morning, sir.
```

```
                        - P L E A -                        3
```

1          THE COURT:  Before I can take your plea, I must ask

2     you a number of questions to assure myself that the plea is a

3     valid one.  These questions are designed to assure me that you

4     understand the charges against you, the consequences of

5     pleading guilty to those charges, the rights that you have,

6     the rights that you waive by pleading guilty.  That any

7     decision to plead guilty is not only knowing, but voluntary.

8          Lastly, that you will tell me facts under oath that

9     show that you are guilty of the charge to which you plead

10    guilty.

11         So the questions are important.  And to the extent

12    that you either do not hear them or do not understand them,

13    please let me know, and I will repeat or rephrase them for you.

14         Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Now, at the call of the calendar in this

17    case, Mr. Epstein was standing next to you, indicated to me

18    that he is your lawyer for this case.

19         A defendant in a criminal case at every stage has

20    the right to be represented by competent counsel and if a

21    defendant could not afford counsel, then counsel would be

22    appointed for him.

23         Is Mr. Epstein your lawyer for this case?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Now, that means that at any point during

A-30

- P L E A -                                                    4

1   this hearing, if you need to speak privately with Mr. Epstein,

2   just let me know and I will permit you to do that, without any

3   penalty whatsoever.

4           Do you understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Now, at the beginning of the proceeding,

7   I asked you to be placed under oath.  That means that any of

8   the questions that you answer at this hearing, regardless of

9   who asks you the question, that those answers that you give,

10  can be used against you, if they are false, or making a false

11  statement or for the crime of perjury.

12          Do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  So, with all those understandings, we

15  now want to back all the way up to the beginning.  I will ask

16  you to place on the record your full name.

17          THE DEFENDANT:  Jose Angel Rodriguez.

18          THE COURT:  And Mr. Rodriguez, how old are you?

19          THE DEFENDANT:  49.

20          THE COURT:  What is the highest grade that you

21  completed in school?

22          THE DEFENDANT:  10th.

23          THE COURT:  Where did you attend school?

24          THE DEFENDANT:  Last school was Franklin Kennedy

25  High School.

A-31

```
                        - P L E A -                        5

 1          THE COURT:  Is that here in New York?

 2          THE DEFENDANT:  Yes, Jamaica, Queens.

 3          THE COURT:  Now, Mr. Rodriguez, are you currently or

 4   have you recently been under the care of a medical doctor?

 5          THE DEFENDANT:  Checked me for my back injuries, I

 6   have a herniated disc, my spine was hit.  The knees are shot

 7   as well.

 8          MR. EPSTEIN:  He is also in treatment for

 9   hypertension, hepatitis C.

10          THE COURT:  Other than hepatitis C, you pretty much

11   described most 50-year old guys that I know.  Many share your

12   pain.

13          Are you currently or are you recently under the care

14   of a psychiatrist?

15          THE DEFENDANT:  I go like every month just to talk,

16   take my stress out-- my depression problem.

17          THE COURT:  At the detention center?

18          THE DEFENDANT:  Yes.

19          THE COURT:  In the last 24 hours, have you taken any

20   narcotic drugs?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Last 24 hours, have you taken

23   medications of any kind?

24          THE DEFENDANT:  Yes, sir, what I take every day.

25          THE COURT:  What kind of medications were they?
```

```
                        - P L E A -                        6
```

1          THE DEFENDANT:  Norvast (ph), high blood pressure

2     pill, a water pill.  For pain I take ibuprofen, 800-milligram,

3     600.

4          THE COURT:  Do any of those medications affect your

5     ability to understand what goes on around you?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  In the last 24 hours, have you consumed

8     any alcoholic beverages?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  Now, other than the depression that you

11    have mentioned to me, have you ever been treated for any other

12    or hospitalized for any other mental illness?

13         THE DEFENDANT:  No.

14         THE COURT:  Have you ever been hospitalized or

15    treated for any drugs or alcohol?

16         THE DEFENDANT:  At fifteen, back and forth.

17         THE COURT:  What?

18         MR. EPSTEIN:  He said since the age of 15, back and

19    forth.

20         THE COURT:  Various kinds.

21         For substance?

22         THE DEFENDANT:  Controlled substance, use of heroin.

23         THE COURT:  And when is the last time that you had

24    treatment?

25         THE DEFENDANT:  Before I came in.  I was in Westside

A-33

```
                    - P L E A -                      7

 1  Medical Group, on 35th and 8th Avenue, I believe.

 2          THE COURT:  That was an outpatient?

 3          THE DEFENDANT:  Yes.

 4          THE COURT:  Offhand, I don't recall when you entered

 5  federal detention.  When was that?

 6          THE DEFENDANT:  I believe November 17th, 2015, sir.

 7          THE COURT:  So you have had no treatment since then?

 8          THE DEFENDANT:  No.

 9          MR. EPSTEIN:  One moment.

10          (Pause.)

11          THE DEFENDANT:  The methadone.

12          MR. EPSTEIN:  At the time that Mr. Rodriguez was

13  arrested, he was on methadone, and since then, he has been

14  taken off of the methadone.  So that is a form of drug

15  treatment.

16          THE DEFENDANT:  Yes.

17          THE COURT:  The removal of the methadone?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And that occurred when you first entered

20  custody?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Most importantly, as you stand before me

23  this morning, is your mind clear?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  You understand what is going on around
```

```
                    - P L E A -                        8
```

1    you in the courtroom?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Now, Mr. Epstein, have you had a full

4    and fair opportunity to discuss this case with Mr. Rodriguez?

5            MR. EPSTEIN:  Yes.

6            THE COURT:  On the basis of your conversations with

7    him, did you conclude that he understands the nature of these

8    proceedings?

9            MR. EPSTEIN:  Yes.

10           THE COURT:  And, do you believe that he understands

11   the nature of the rights that he would waive by pleading

12   guilty?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Based on your conversations, do you have

15   an opinion as to whether or not he is competent to enter a

16   plea of any kind at this time?

17           MR. EPSTEIN:  I believe he is competent.

18           THE COURT:  Have you discussed with Mr. Rodriguez,

19   the maximum sentence and fine that can be imposed in this

20   case?

21           MR. EPSTEIN:  Yes.

22           THE COURT:  Have you also discussed with him the

23   operation of the sentencing guidelines and the context of

24   recent court decisions?

25           MR. EPSTEIN:  Yes.

A-35

- P L E A -                                                                  9

1          THE COURT:  Now, Mr. Rodriguez, Mr. Epstein as you

2     just heard, told me, he believes, he has had a full and fair

3     opportunity to discuss your case with you.  Do you believe

4     that you have had a full and fair opportunity to discuss your

5     case with him?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Are you fully satisfied with the

8     representation and advice that you have received from Mr.

9     Epstein about this case?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Now, Ms. Gandy, I will ask you to place

12     on the record at this time the charge or charges to which it

13     is anticipated that Mr. Rodriguez will enter a plea of guilty.

14          MS. GANDY:  Yes, Your Honor.

15          Mr. Rodriguez has agreed to plead guilty to two

16     counts.  The first is a lesser included count within Count One

17     of the indictment.  And that is, to the crime of participating

18     in a conspiracy to distribute heroin, cocaine base, cocaine

19     and marijuana.  He has agreed to plead guilty as I said to a

20     lesser included which pertains to the weight, which he is

21     willing to acknowledge his participation in.

22          That is under 21-- Title 21, United States Code

23     Section 841(b)(1).

24          THE COURT:  No weight stated or lesser.

25          MS. GANDY:  Lesser amount.

```
                    - P L E A -                      10
```

1            MR. EPSTEIN:  The five to 40-year count, Your Honor.

2            MS. GANDY:  Exactly.

3            He had originally been indicted on the 10-year

4     mandatory minimum.

5            Count Two of the indictment which he agreed to plead

6     guilty to, the unlawful use and possession of a firearm,

7     specifically the brandishing of the firearm under 924(c)(1)--

8     924(c) and at the time of sentencing assuming the plea goes

9     through, the Government will move to dismiss the other counts

10    of the indictment against Mr. Rodriguez.

11           THE COURT:  That is use of firearm in connection

12    with the drugs?

13           MS. GANDY:  Yes, Your Honor.

14           THE COURT:  All right.

15           Mr. Rodriguez are those among the charges that you

16    have had an opportunity to discuss with Mr. Epstein?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  And do you understand those charges?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Do you have any questions about them?

21           THE DEFENDANT:  No, sir.

22           THE COURT:  And they are the charges to which you

23    intend to plead guilty?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Now, what I want to do next is to go

```
                         - P L E A -                        11
```

1   over with you, your rights.  I know based on what you and Mr.

2   Epstein have both told me, you have already done this.  I want

3   to assure myself on the record that you understand the rights

4   that-- the principal rights that you waive by pleading guilty.

5           The first and most important thing you must

6   understand is that even if you are guilty, you don't have to

7   plead guilty.

8           Under the constitution and laws of the United

9   States, it is the Government's burden, the Government's

10  obligation to establish the guilt of a defendant beyond a

11  reasonable doubt.  And if the prosecutor does not or cannot

12  meet her burden of proof, then the jury has the duty to find

13  that defendant not guilty, even if the defendant is guilty.

14          So, what that means is that even if you are guilty,

15  you still have a choice.  It is up to you to decide what to

16  do, not your lawyer or anybody else.  You may enter a plea of

17  guilty and withdraw your plea of not guilty, as you apparently

18  wish to do, or you may maintain your plea of not guilty, go to

19  trial and make the Government meet its burden of proof.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Now, if you did plead not guilty, indeed

23  you would be entitled to a speedy and public trial, presumably

24  right in this very courtroom, before a jury and with the

25  assistance of counsel on the charges contained in the

A-38

```
                      - P L E A -                      12
```

1    indictment.

2              Do you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Now, at the trial, you would be presumed

5    innocent.  You would not have to prove that you were innocent.

6    It is the Government's burden to prove you are guilty.

7              Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  But by pleading guilty, you relieve the

10   Government of the burden of proving that you are guilty.

11             Do you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Now, at the trial, the witnesses for the

14   Government would have to come into open court, testify in your

15   presence, your lawyer would have the right to cross examine

16   those witnesses for the Government, to object to evidence

17   offered by the Government, to raise defenses on your behalf,

18   to call witnesses on your behalf, including witnesses who

19   might not want to testify.

20             Do you understand that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  But by pleading guilty, you give up your

23   right to confront the witnesses who would testify against you,

24   you give up your right to raise defenses, and your right to

25   offer proof on your own behalf.

```
                        - P L E A -                      13
```

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Now, at a trial, you would have the

4   right to take the stand and testify in your own behalf, if you

5   chose to do so.

6          Do you understand that?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And, though a defendant in a criminal

9   case in the United States, cannot be forced to take the

10  witness stand, and say anything that could be used to show

11  that he is guilty of the crimes with which he has been

12  charged.  If you decided not to testify, I would instruct the

13  jury that that was your right against self incrimination and

14  that they could not hold that fact against you.

15         But if you do plead guilty, you are giving up your

16  right against self incrimination, because you have admitted

17  your guilt.

18         Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Now, actually, at this proceeding, it

21  goes even beyond that.  Not only do you give up your right

22  against self incrimination, you will through statements that

23  you will make or answers to questions that will be put to you,

24  you will actually give me facts on the record that show that

25  you are guilty of the charges to which you plead guilty.

```
                    - P L E A -                          14

1              Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Now, if you offer your plea of guilty

4    and I accept it, you will be giving up all of the rights I

5    have just discussed with you.  There will be no trial of any

6    kind.  I will simply enter a plea-- a judgement of conviction

7    based on your guilty plea.

8              Do you understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And Ms. Gandy, is there an appellate

11   waiver in the agreement?

12             MS. GANDY:  There is, Your Honor.

13             The defendant agrees not to file an appeal or

14   otherwise challenge the conviction if he is sentenced to a

15   term of 319 months or below.

16             THE COURT:  Let me explain what that appellate

17   waiver business is all about Mr. Rodriguez.

18             If you are to go to trial and be found guilty by the

19   jury, you would then have a right to appeal both the

20   conviction and the sentence.  But by entering into a plea

21   agreement that contains an appellate waiver, you are giving up

22   your right to appeal the conviction or to challenge, all, part

23   or any of the sentence that I impose.

24             Do you understand that?

25             THE DEFENDANT:  Yes, sir.
```

```
                    - P L E A -                      15

 1              THE COURT:  With all--

 2              MS. GANDY:  Your Honor, if I may.

 3              MR. EPSTEIN:  Well, the sentence were above

 4   319 months.

 5              THE COURT:  I will get to that.  We get to specifics

 6   later.

 7              The concept is, that he gives up part of his

 8   appellate rights.

 9              MR. EPSTEIN:  Yes.

10              THE COURT:  He understands that.

11              MR. EPSTEIN:  Yes.

12              THE COURT:  I don't stop there.  We will get there

13   very expressly because it is an important part of the deal,

14   that is why I separate it out and do it again.  So everybody

15   knows where we are.

16              MS. GANDY:  Your Honor, I wanted to flag for Your

17   Honor, that -- plea agreements don't always include that, but

18   in this instance, the defendant is also stipulating to some

19   additional factual criminal conduct.  So to the extent Your

20   Honor is reviewing waivers, I thought that I put that on your

21   radar as well.

22              THE COURT:  Well, why don't you tell me.

23              MS. GANDY:  Would you like me to read them?

24              THE COURT:  You can read them as well.

25              So these are-- Ms. Gandy will tell us what they are,
```

```
                        - P L E A -                      16
```

1   then I will make sure you understand it.

2          MR. EPSTEIN:  These are facts that constitute the

3   brandishing.

4          THE COURT:  I assumed that that is what they were.

5          MS. GANDY:  Specifically, Your Honor, the defendant

6   in paragraph four of the plea agreement, the defendant

7   stipulates and admits that one, in the course of the narcotics

8   conspiracy to which he is pleading guilty, the defendant

9   possessed one or more firearms in furtherance of the narcotics

10  conspiracy.

11         Two.  On or about August 12th, 2015, the defendant

12  discharged one such firearm in the direction of an individual

13  with whom the defendant had a dispute over a car.

14         And three, in or about August 2015, the defendant

15  instructed a coconspirator to discharge another such firearm,

16  at individuals driving a car on New York State Route 878, and

17  the coconspirator discharged the firearm.

18         THE COURT:  Do you understand you have agreed to

19  those facts Mr. Rodriguez?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  All right.

22         As I indicated, you have indicated that you

23  understand your rights, and that you still intend to offer

24  your plea of guilty.

25         And Mr. Epstein mentioned a written plea, at the

A-43

```
                      - P L E A -                    17
```

1   very top of the hearing.  So I assume the Deputy Clerk has

2   marked that plea agreement as a Court Exhibit.

3           He has, it is marked as Court Exhibit 1.

4           Just to double check on what appears to be page 11,

5   signatures are affixed.

6           Mr. Rodriguez, that plea agreement, marked as Court

7   Exhibit 1, that is your signature?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Is that the signature you placed on the

10  document when you entered the courtroom?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Mr. Epstein, have you signed it as well?

13          MR. EPSTEIN:  Yes.

14          THE COURT:  Ms. Gandy?

15          MS. GANDY:  I have.

16          THE COURT:  Anyone else?

17          MS. GANDY:  The supervisor in my office Alon

18  Lipshitz has signed it.

19          THE COURT:  Now Mr. Rodriguez, before you signed the

20  plea agreement, Court Exhibit 1, did you read it?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you fully discuss it with Mr.

23  Epstein?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And, do you understand it?

```
                    - P L E A -                        18
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  And do you have any questions about it?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  And your signature in open court earlier

5  today, that was voluntary, no one forced you to sign it, did

6  they?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  You do not have any other agreements

9  with the Government about this case?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Mr. Epstein, you did in fact fully

12  discuss this plea agreement with Mr. Rodriguez?

13          MR. EPSTEIN:  Yes.

14          THE COURT:  Based on your discussions with him, did

15  you conclude that he understood it?

16          MR. EPSTEIN:  Yes.

17          THE COURT:  Did you conclude that his decision to

18  sign it was voluntary?

19          MR. EPSTEIN:  Yes.

20          THE COURT:  To the best of your knowledge, and

21  information, this is the only agreement Mr. Rodriguez has with

22  the Government about this case?

23          MR. EPSTEIN:  Yes.

24          THE COURT:  Now, I want to go over that agreement

25  with you in some detail Mr. Rodriguez, to make sure I

```
                    - P L E A -                      19
```

1   understand that you understand it.

2           I am going to go over it with Ms. Gandy being

3   appointed as the monitor of my eyes to make sure that I don't

4   misstate what the possible consequences of your plea are.

5           The first area that I want to cover with respect to

6   Count One is the possibility of imprisonment.  Under the

7   sections of law that control this particular count, those

8   sections require me to impose a minimum sentence of no less

9   than five years, but authorize me to impose a sentence as long

10  as forty years.

11          Do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, the second area that I want to

14  discuss with you is the possibility of supervised release.

15  Supervised release refers to that period of time following any

16  period of imprisonment.  The defendant who has been imprisoned

17  is released from jail on certain terms and conditions.  If

18  during the period of supervised release that defendant were to

19  violate one of those terms or conditions, well that defendant

20  could be sent back to prison for additional jail time.

21          Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Now, under the sections that control

24  here, the minimum term of four years of supervised release.

25          MS. GANDY:  Yes.

```
                    - P L E A -                        20
```

1          THE COURT:  The maximum is life?

2          MS. GANDY:  That's right.

3          THE COURT:  The penalty period is up to?

4          MS. GANDY:  If he violates a condition of release,

5     he may be sentenced up to three years without credit.

6          THE COURT:  What that means again, this section

7     requires me to impose supervised release, requires me to

8     impose a period of not less than four years of supervised

9     release.  It could be as long as the rest of your life and for

10    whatever the period is, should you violate a term or condition

11    of the release, you can be sent back to jail for up to

12    three years without time -- credit for any time previously

13    served in prison or time previously spent on supervised

14    release.

15          Do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Now, the sections of law that this count

18    also empower the Court to impose a fine and the maximum fine

19    on this count is five million?

20          MS. GANDY:  Correct.

21          THE COURT:  $5 million.

22          Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  And the sections of law also require me

25    to impose a $100 special assessment.

```
                    - P L E A -                        21
```

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  There is no forfeiture in this case?

4          MS. GANDY:  There is, Your Honor.  It is set forth

5     in paragraph 7 through 13.

6          THE COURT:  Is there an amount fixed?

7          MS. GANDY:  There is no money judgment, Your Honor.

8     There is the forfeiture of various properties that was seized

9     from him and he has also agreed to complete a financial

10    affidavit that is to be submitted by next Friday.

11         THE COURT:  In connection with both counts or just

12    Count One?

13         MS. GANDY:  With both counts, Your Honor.

14         THE COURT:  This is a common element, and the

15    properties are identified.

16         MS. GANDY:  Yes, they are itemized in paragraph 7.

17         THE COURT:  Now, you understand that as a

18    consequence of pleading guilty to both this count and/or the

19    other second count, that you will be forfeiting certain

20    properties that you own?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Now, are you a citizen of the United

25    States, Mr. Rodriguez?

- P L E A -                                            22

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  The only reason I ask that, is if you

3    were not, then as a consequence of this plea, you could be

4    ordered to-- with respect to both counts, or either count, you

5    could be ordered removed, deported or excluded from the United

6    States.

7          Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, the second count is the firearms

10   charge and this is the minimum term here is-- this is a 7-year

11   mandatory minimum consecutive penalty.

12         MS. GANDY:  That's correct.

13         THE COURT:  So this one could be as long as--

14         MS. GANDY:  Life is the maximum.

15         THE COURT:  Life as well.

16         So what that means is that the Court is required, if

17   you plead guilty to this count, required to impose a 7-year

18   minimum term of imprisonment, which must run consecutively to

19   the time imposed on the first count, but can run as long as

20   the rest of your life.

21         Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And any point in between, anywhere

24   between seven and life, do you understand that?

25         THE DEFENDANT:  Yes, sir.

```
                       - P L E A -                      23

 1            THE COURT:  Now is the supervised release term the

 2   same--

 3            MS. GANDY:  It is not.  There is a-- excuse me, a

 4   maximum of five years on this count.

 5            THE COURT:  No minimum.

 6            MS. GANDY:  No minimum.

 7            THE COURT:  So, it is slightly different.

 8   Supervised release terms run concurrently in any event.  But

 9   on this-- with respect to this count, there is no minimum and

10   the maximum is five years.

11            Do you understand that?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Is there a fine with respect to this?

14            MS. GANDY:  There is a maximum fine of $250,000,

15   Your Honor.

16            THE COURT:  The maximum fine, that can be-- that can

17   be imposed and the maximum fine is $250,000.

18            Do you understand that?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  We already discussed forfeiture because

21   it is the same as Count One.  But-- possibility if you were

22   not a citizen, deportation would be the same.  And the special

23   statutory assessment that is also the same, is it not?

24            MS. GANDY:  $100, yes, Your Honor.

25            THE COURT:  That is also cumulative.  It is one
```

- P L E A -                                                    24

1   hundred on each count for a total of $200.

2         Do you understand that?

3         THE DEFENDANT:  Yes, sir.

4         THE COURT:  So those are the possible consequences

5   of the plea.

6         As I said earlier, with respect to the appellate

7   waiver, I do that separately because when we go over some of

8   the consequences we have just went over, are possible, meaning

9   they are a range.

10         This consequence of your plea is part of the

11   contract.  It is part of the deal.  A contractual term.  It is

12   simply this.  But by agreeing to this plea, you are giving up

13   your right to file an appeal or to collaterally attack your

14   sentence in any way if the Court imposes upon you a total

15   sentence of 319 months or below.

16         Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Now, I want to continue our discussion

19   with respect to sentencing, because as I indicated when we

20   went over, as we went over these possible consequences of your

21   plea, that there were sentencing ranges.

22         But the mere fact that there is a range, doesn't

23   mean the Court is free to pick out a number somewhere in

24   between.  There is a process for doing that.

25         The process begins with the guidelines, promulgated

- P L E A -                                                    25

1    by the United States Sentencing Commission.  Those guidelines

2    pinpoint a specific sentence for any given offense.  They

3    point the Court to factors that could lead the Court to depart

4    from that pinpoint, either upwardly or downwardly.  And while

5    these guidelines are no longer mandatory, they do remain

6    advisory, so that the Court has to look at them and take

7    advice from them.

8              Do you understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  So concretely what happens next.  At the

11   conclusion of this hearing, the work of the United States

12   Probation Office begins.  Probation will conduct a separate

13   investigation into the offenses of conviction and to the

14   personal circumstances of your life, your personal history,

15   your criminal history, if any, and they will make a report.

16             That report will be sent to you and Mr. Epstein and

17   it will be sent to the Government.  It will be sent to me as

18   well.

19             In that report, probation will make a recommendation

20   with respect to their findings of what the guidelines should

21   be, what the offense level and what the criminal history

22   category should be.

23             No one can predict with precision what probation

24   will recommend, and no one including me, can predict right now

25   with precision, what I will do with the recommendation, when I

```
                        - P L E A -                      26
```

1   get it.  But, it is important to know that it will be there.

2           Now, after we all receive that report, and everyone

3   has had a chance to look at it, we will come back to court for

4   another hearing like this.

5           The first thing the Court will do, we will hear the

6   lawyers as to what the guidelines should be and the Court will

7   then set the guidelines.

8           The Court will then go into the sentencing process

9   itself.  That process is controlled by Title 18, United States

10  Code section 3553(a).  That section sets forth various

11  standards, goals and objectives for the Court to achieve in

12  imposing a sentence.

13          Nothing really remarkable, the Court has done it for

14  a long time.  That is to try to fashion a penalty that -- a

15  punishment that fits the crime.

16          And, one of the objectives is to provide a

17  punishment.  That there should be a penalty that restricts the

18  defendant, takes something away from the defendant, somewhat

19  as a consequence of his having violated the law.

20          It also tells the Court that the more serious the

21  crime, the more substantial the punishment should be.  The

22  Court is told also that its sentence must promote respect for

23  the law.  If Congress enacts all of these laws and the Court

24  never imposes any of the penalties that the Congress enacts,

25  well there is not going to be much respect for the law.  So

- P L E A -                                                        27

1    the Court has to be concerned about that, between the statutes

2    and the actual conduct of what happens in the courtroom.

3           The Court is always very much concerned about

4    deterrence, that the punishment -- the penalty will in some

5    way deter the defendant specifically from committing any

6    further crimes.  And also, stand as a general warning for the

7    public at large, not to engage in this kind of conduct or

8    similar penalties can be imposed on them.

9           The sections of law also tell the Court that, if

10   there is a need to incapacitate you, remove somebody from

11   society, to protect society, that the Court should be mindful

12   of that as well.  Be mindful of any rehabilitative needs of a

13   defendant, to get to look at the personal characteristics of

14   the defendant.  To see how that defendant is like or unlike

15   other people who have committed the same offense.  So that

16   the-- there should by harmony in the sentences, that people

17   who are similarly situated for doing similar things should

18   face similar penalties.  So that is also a concern.

19          Then, lastly, the section tells the Court, that

20   after you figure out all these competing objectives, that the

21   Court's sentence should be no harsher than necessary to

22   accomplish that.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Now, I also ask-- so I say no one can

```
                        - P L E A -                              28
```

1  predict with precision, and I do it merely as a piece of

2  information that a defendant could have, at the time of

3  sentence, at the time of the plea.  But no one can predict the

4  position, it doesn't mean the lawyers can't make an

5  approximation of what they think probation will recommend to

6  the Court what the guidelines are.

7         Ms. Gandy, has the Government made an approximation

8  of this case?

9         MS. GANDY:  We have.  The Government estimates that

10  a combined guideline range for both counts combined would be

11  252 to 294 months.  That is after crediting the defendant

12  three acceptance points.  And I will note that the defendant

13  in this plea agreement has stipulated to those guideline

14  calculations and agreed not to challenge the drug type or

15  quantity set forth in the drug labs relevant to the case.

16         MR. EPSTEIN:  That's correct, Your Honor.

17         THE COURT:  And that is for your information,

18  keeping in mind that the final arbiter of what the guidelines

19  are, is me.  Regardless of any stipulation that counsel have

20  made.

21         Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And you understand that if at the end of

24  the day, these guidelines prove different, the mere fact that

25  they are different from what has been estimated, doesn't give

```
                        - P L E A -                        29
```

1   you a ground then to withdraw the plea you entered now.

2           Do you understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Okay.  Now, I pause for the following

5   Mr. Rodriguez, if you have any questions for me, the Court

6   Reporter will take them down, I will try to answer them on the

7   record.  If you need to speak privately with Mr. Epstein, I

8   will give you time for that.  If you don't need time for

9   either of those two things, I would simply move to take your

10  plea.

11          Do you need additional time or are you ready now to

12  offer your plea?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  You are ready?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Let me begin with Mr. Epstein.

17          Mr. Epstein, do you know of any reason why Mr.

18  Rodriguez should not enter a plea of guilty at this time?

19          MR. EPSTEIN:  No.

20          THE COURT:  Are you aware of any viable legal

21  defenses to these charges?

22          MR. EPSTEIN:  No.

23          THE COURT:  Then, Mr. Rodriguez, I ask you, with

24  respect to the Count One and its lesser included form, what is

25  your plea, guilty or not guilty?

```
                         - P L E A -                           30
```

1          THE DEFENDANT:  Guilty, sir.

2          THE COURT:  And with respect to Count Two, what is

3   your plea, guilty or not guilty?

4          THE DEFENDANT:  Guilty, sir.

5          THE COURT:  Now, are you pleading guilty to these

6   two charges voluntarily and of your own free will?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Has anyone forced you or threatened you

9   to plead guilty?

10         THE DEFENDANT:  No, sir.

11         THE COURT:  Other than the promises contained in the

12  plea agreement marked as Court Exhibit 1, has anyone made any

13  other promises to you to induce you to plead guilty?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Has anyone made any promises to you as

16  to what your final sentence would be?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  Now, earlier in the proceeding, you may

19  recall, I asked Ms. Gandy to place the nature of the charges

20  on the record and I said, there would come a point, either

21  through a narrative or answer to questions, that you would

22  have to give me facts that show that you are guilty of the two

23  charges to which you have just plead guilty.  We have reached

24  that point.

25         Mr. Epstein, I don't know if you arranged for a

- P L E A -                                                    31

1   narrative or make inquiry of Mr. Rodriguez, to ascertain this

2   information.  We can proceed either way.

3            MR. EPSTEIN:  You can say it in your own words.

4            THE COURT:  Please proceed Mr. Rodriguez.

5            THE DEFENDANT:  For the time that I was selling

6   narcotics, I sold drugs in the Rockaway area.

7            THE COURT:  Were you working with other people?

8            THE DEFENDANT:  Yes.

9            And in the course of that, I got into an

10  altercation.  I pulled out a gun on a person, scared him off.

11  Didn't hurt him.  Just scared him off my property.  That's it.

12           THE COURT:  Do you recall the kind of drugs that you

13  were selling?

14           THE DEFENDANT:  I was selling heroin.

15           THE COURT:  Are there other kinds also included?

16           MS. GANDY:  The count includes heroin, cocaine base,

17  cocaine and marijuana, Your Honor.

18           THE COURT:  So anyone is sufficient in your mind?

19           MS. GANDY:  Acknowledging his participation in the

20  consequences to distribute heroin is sufficient, Your Honor.

21           I would just ask the defendant to acknowledge since

22  he is pleading to 841(b)(1)(b), that there was at least

23  100 grams of heroin involved in the conspiracy and also, that

24  the conspiracy charged existed between December 2014, and

25  November 2015.

```
                        - P L E A -                        32
```

1        THE DEFENDANT:  That is correct, Your Honor.

2        THE COURT:  On both scores?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Both the amount and the dates?

5        THE DEFENDANT:  Yes, sir.

6        THE COURT:  Are you satisfied?

7        MS. GANDY:  On that count, yes.

8        THE COURT:  Now with respect to --

9        MR. EPSTEIN:  I think--

10        THE COURT:  You mentioned the gun, you mentioned

11   that it was discharged, that you wanted to scare people.

12        Was it in connection with the conspiracy to

13   distribute the heroin that you had?

14        THE DEFENDANT:  No.

15        (Pause.)

16        THE DEFENDANT:  Yeah.  Yes.

17        THE COURT:  As a result, because of your involvement

18   in the heroin conspiracy, drug conspiracy, the weapons were

19   discharged?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And that that occurred at or around in

22   that same period of time?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  Also in Rockaway, was it?

25        THE DEFENDANT:  Yes.

- P L E A -                                                    33

1          THE COURT:  Ms. Gandy?

2          MS. GANDY:  Yes.  To the extent that the defendant

3   acknowledges he is stipulating to the specific facts I read

4   earlier, I think those can supplement the allocution

5   appropriately.

6          THE COURT:  That makes you satisfied.

7          MS. GANDY:  Yes.

8          THE COURT:  He has stipulated to those facts

9   already?

10         MS. GANDY:  Yes.

11         THE COURT:  On that basis, the Court is also

12  satisfied.  The Court finds Mr. Rodriguez that you understand

13  these charges against you.  That you understand the

14  consequences of pleading guilty to them.  That you understand

15  your rights, the rights that you now waived by pleading

16  guilty.  That your decision to do so was not only knowing but

17  voluntary and through your allocution here at the time of the

18  plea, you have also given me facts that show you are indeed

19  guilty of these two charges.

20         So the Court accepts your plea of guilty to

21  Counts One and Two.  Count One being the lesser included form.

22         The Court does not-- we don't set a sentencing date

23  now.  The Probation Department as I indicated earlier will

24  begin its work and after everyone has had a chance to review

25  their work, we will come back for another hearing.

```
                        - P L E A -                    34
```

1          Mr. Epstein, you will be appointed the marshal of my

2   Probation friends.  To the extent they are not proceeding at a

3   pace which is usually twelve to fourteen weeks, please let Mr.

4   Villanueva know, he will use his good offices to encourage

5   them for you.

6          MR. EPSTEIN:  Very good.

7          THE COURT:  I assume the record will reflect,

8   whenever it is that Probation actually makes contact with Mr.

9   Rodriguez, you wish to be notified and to be present?

10          MR. EPSTEIN:  Yes.

11          THE COURT:  The record does reflect that.

12          Anything else we need to attend to before we

13   adjourn?

14          MS. GANDY:  No, not on behalf of the Government, no,

15   Your Honor.

16          MR. EPSTEIN:  No, Your Honor.

17          THE COURT:  Mr. Rodriguez, good luck to you, we will

18   see you.

19          MR. EPSTEIN:  One moment.

20          (Pause.)

21          MR. EPSTEIN:  Your Honor, Mr. Rodriguez asked me

22   whether on the gun charge, is to a lesser included.

23   Technically it is lesser included it is to the 7-year minimum

24   not the 10-year, I think that is clear in the record.

25          THE COURT:  It was seven.  Do you understand it was

- P L E A -                                                           35

1   seven?

2              THE DEFENDANT:  Good, thank you.

3              THE COURT:  There is even a heavier one.  There is a

4   25-year one also.

5              MR. EPSTEIN:  Okay.  Your Honor, I think what was a

6   little confusing to Mr. Rodriguez, we kind of did the drug

7   count as lesser included.  We didn't use the same language.

8              For practical purposes it is the lower count.

9              THE COURT:  It is.

10             Okay?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Good luck to you Mr. Rodriguez, see you

13  at the time of sentence.

14             Ms. Gandy, we will give you the plea agreement back.

15             MS. GANDY:  Thank you.

16             MR. EPSTEIN:  Have a nice weekend.

17             THE COURT:  Yes, you too.

18             (Matter concluded.)

19                  - - o o O o o - -

20  I CERTIFY that the foregoing
    is a correct transcript from
21  the record of proceedings
    in the above entitled matter.

22  s/Richard W. Barry

23  _____
    Richard W. Barry, RPR

24

25

1

<pre>
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - X
 3
      UNITED STATES OF AMERICA,      : 15-CR-00576(ENV)
 4                                   :
                                     :
 5                                   :
          -against-                  : United States Courthouse
 6                                   : Brooklyn, New York
                                     :
 7                                   :
                                     : Friday, February 22, 2019
 8    JOSE RODRIGUEZ,                : 11:00 a.m.
                                     :
 9             Defendant.            :
                                     :
10
      - - - - - - - - - - - - - X
11

12              TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
                BEFORE THE HONORABLE ERIC N. VITALIANO
13                UNITED STATES SENIOR DISTRICT JUDGE

14
                       A P P E A R A N C E S :
15

16    For the Government:   RICHARD P. DONOGHUE, ESQ.
                            United States Attorney
17                          Eastern District of New York
                            271 Cadman Plaza East
18                          Brooklyn, New York 11201
                      BY:   KEVIN TROWEL, ESQ.
19                          Assistant United States Attorney

20
      For the Defendant:    EPSTEIN & WEIL
21                          225 Broadway
                            Suite 1203
22                          New York, New York 10007
                      BY:LLOYD EPSTEIN, ESQ.
23

24    Court Reporter:   Stacy A. Mace, RMR, CRR, RPR, CCR
                        Official Court Reporter
      E-mail:  SMaceRPR@gmail.com
25    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
</pre>

SAM      OCR      RMR      CRR      RPR

```
                    Proceedings                        2

 1                 (In open court.)

 2            (Judge ERIC N. VITALIANO entered the courtroom.)

 3            THE COURTROOM DEPUTY:  All rise.  Court is now open.

 4            The Honorable Eric N. Vitaliano presiding.

 5            The case on the calendar is USA versus Rodriguez,

 6       case number 15-CR-576 on for sentencing.

 7            Will the parties please note their appearance

 8       beginning with Government counsel?

 9            MR. TROWEL:  Good morning, Your Honor.  Kevin Trowel

10       for the United States.

11            THE COURT:  Welcome back.

12            MR. TROWEL:  Thank you.

13            MR. EPSTEIN:  Lloyd Epstein for Mr. Rodriguez.

14       Good morning, Your Honor.

15            THE COURT:  Good morning, Mr. Epstein.

16            USPO TURTON:  And Jaime Turton from Probation.

17            THE COURT:  Good morning, Officer Turton.  Good to

18       have you as well.

19            MR. EPSTEIN:  Your Honor, Mr. Rodriguez has a bad

20       back and in prior proceedings you permitted him to sit during

21       the proceedings, so I would ask that he be allowed to sit

22       again during this.

23            THE COURT:  Absolutely.

24            (Defendant entered the courtroom.)

25            MR. EPSTEIN:  Judge, where do you want him to sit,
```

```
                    Proceedings                    3
```

1   next to me or at counsel table?

2          THE COURT:  Whatever is easier for him, frankly.

3          MR. EPSTEIN:  I think over here (indicating) is

4   easier.

5          THE COURTROOM DEPUTY:  All parties are present,

6   including defendant.

7          THE COURT:  All right.

8          Bad back and all, Mr. Epstein, is Mr. Rodriguez

9   ready for sentence?

10         MR. EPSTEIN:  Yes.

11         THE COURT:  All right, let me begin first by making

12  my standard inquiry.  Based on what I read, I suspect the

13  answer will be in the affirmative, but I do inquire as to

14  whether either side believes that they are entitled to and are

15  requesting a Fatico hearing?

16         MR. TROWEL:  Could I speak to that for just a

17  moment, Your Honor?

18         And I apologize for raising this belatedly, and

19  there may not be an issue here, but I suspect on a couple of

20  issues raised in Mr. Epstein's letter, there may be a nub of

21  fact that we can agree on, but there may be a penumbra, if you

22  will, of facts or assertions outside of that that there may be

23  a dispute about.  And I think it might be helpful, if it's

24  okay with Your Honor, at the outset to flag those and see if

25  we can get to a point where we can agree we don't need a

```
                        Proceedings                    4
```

1   Fatico before we proceed to the next step.

2            Is that okay?

3            THE COURT:  Absolutely, because if we need a Fatico,

4   we have to do it upfront.

5            MR. TROWEL:  Yes.

6            THE COURT:  So it makes sense.

7            MR. TROWEL:  Great.

8            So the two issues, I think, are Mr. Rodriguez's drug

9   use and his mental illness or his sort of mental status.

10           On the question of drug use, the letter says he's a

11  life-long user of heroin and angel dust, which I think he's

12  referring to PCP in that case.  And with respect to the PCP,

13  in particular, the letter asserts that he was smoking it up to

14  his arrest in this case.  That's on page 6 of the letter.

15           The house was searched at the time of his arrest.

16  There was no angel dust or PCP found in the location, and the

17  Government's investigation here involved a Title III wiretap,

18  multiple cooperating witnesses outfitted with video cameras

19  and recording devices, and there is -- as far as I am aware,

20  having listened to this in realtime -- not a shred of evidence

21  in this case that during the charged period Mr. Rodriguez was

22  using drugs.

23           I am not sure that that matters all that much to the

24  argument that I think Mr. Epstein plans to make about

25  potentially the -- the Government does not dispute that

Proceedings                                                  5

1   Mr. Rodriguez was previously a user and, it appears from his

2   criminal record and other sources, a heavy user.  The

3   Government wouldn't dispute that that lifestyle will have an

4   effect on his mental capacities.  I don't think any of that is

5   in dispute.

6          I do think it's important because of arguments the

7   Government intends to make about his role in the organization,

8   his relationship with his co-defendants, that he was not a

9   user.  He was a clear-thinking -- as clear thinking as he's

10  capable of thinking, a clear-thinking leader.  He doesn't

11  dispute the leadership enhancement here in the guidelines.  He

12  was a leader of this organization and he was not a user.

13         So, that point is important to the Government and so

14  I think we should sort that out.

15         The other issue is the question of his mental

16  illness or mental capacity.  The Government would not dispute

17  that or wouldn't be in a position to dispute that he has -- or

18  maybe is on the low end of the IQ scale, or however one wants

19  to phrase that.  I think that's one conclusion that can be

20  drawn from the psychologist's report.

21         There is a lengthy section of Mr. Epstein's letter,

22  though, where he talks about memory lapses and Mr. Rodriguez's

23  inability to recognize family members, you know, remember

24  calls with his mother and so on.  And, again, over a lengthy

25  investigation, a thirty-day wiretap, a much longer period of

Proceedings                                    6

1   cooperating witness videos, human source reporting, that is

2   absolutely not present.  And I think were this to be an issue,

3   one way the Government would counter this in a Fatico would

4   simply be to play recordings for Your Honor where

5   Mr. Rodriguez remembers outstanding debts and instructs people

6   to pay the money they owe him, remembers who is holding his

7   firearms and his narcotics, remembers the sources of his

8   supplies, remembers orders he's placed for firearms, and so

9   on.  There simply is no evidence of the kind of memory lapse

10  that Mr. Epstein is asserting in the letter here.  And so I

11  think, if that were an issue, the Government would probably in

12  the first instance -- and, again, I recognize this is the

13  Government's fault for not raising this sooner and I apologize

14  for that, Your Honor -- I think we probably would request an

15  evaluation of our own, and then we would proceed to a Fatico

16  where we would likely take issue with some of the conclusions,

17  probably, depending on what we heard from our source, and we

18  would probably put on human testimony, live testimony, and

19  some recordings for Your Honor so that you could hear and

20  judge for yourself his mental state during the relevant

21  period.

22          THE COURT:  Mr. Epstein.

23          MR. EPSTEIN:  I filed my papers in April of 2018,

24  which is approximately ten months ago.  So I was a little

25  surprised that the Government is taking this position now,

Proceedings                                                    7

1   since the Government has had a long time, you know, in which

2   to raise the issue.

3           The question also is whether or not this dispute is

4   relevant within the context of what the Court's sentencing

5   limitations are, that Mr. Rodriguez faces a minimum of

6   12 years in jail and there's -- certainly, I can't ask for

7   anything less than that.

8           So within that context, the question really is

9   whether or not the dispute I have with the Government is all

10  that, you know, significant.  And we presented mental health

11  records that go back 35 years from the New York State

12  Department of Corrections.  We presented, you know,

13  Dr. Goldstein's reports, my observations, the family's

14  observations.  You know, that if I were asking for a sentence

15  of probation or three or four years, you know, the dispute

16  probably would have more significance.

17          In our papers we do address the issue about his

18  competence to run a small organization, and I think

19  Dr. Goldstein phrased it very well when he talked about the

20  World War II veterans who would run the newsstands in the

21  Bronx or in Brooklyn, people who were completely shellshocked,

22  and I had my own experience with that.  My father's closest

23  friend lost his leg in Palmyra and I remember as a little kid

24  banging on his wooden leg, but he was somebody I just remember

25  something was always off.  You know, I could never -- and he

Proceedings                                          8

1  ran a newsstand.

2          So within the context of a 12-year minimum sentence,

3  I'm not sure how significant it is, but that really is up to

4  the Court to decide.  This really is -- it's on your plate,

5  Your Honor.

6          THE COURT:  Right.  I think the issue that

7  Mr. Trowel is raising is whether or not, if those things, the

8  findings of the Goldstein report are critical to a

9  determination of sentence, that Mr. Trowel believes at a

10 Fatico he can dispute whatever conditions Mr. Rodriguez

11 suffers from, how it did not affect his ability to be an

12 organizer and leader of the conspiracy.

13         So I think what he is saying is, to the extent that

14 you intend to rely on those limitations that have been

15 outlined by Dr. Goldstein, he wants to have an opportunity to

16 controvert them.

17         Am I understanding you correctly?

18         MR. TROWEL:  I think that's right, Your Honor, but

19 let me see if I can drill a little bit further down and just

20 suggest I'm pretty sure Mr. Epstein is not challenging any of

21 the guidelines, so he accepts and Mr. Rodriguez accepts the

22 leadership role enhancement here.  So I don't think he's

23 suggesting that the evidence he's directing the Court to

24 undermines Mr. Rodriguez's leadership role.

25         I think, though, that he is suggesting that, within

Proceedings                                              9

1    that factual framework, he's a leader.  The organization is

2    what it is, there is no factual dispute about that.  It had

3    the members that are alleged, there is no factual dispute

4    about that.  But given all of those things, it's a mitigating

5    factor that warrants a below-guidelines sentence and, indeed,

6    a very low sentence relative to the crimes of conviction

7    because he's lacking some capacity.

8              Another thing occurred to me as I heard Mr. Epstein

9    speak.  Part of -- part of the reason why I'm not sure a

10   Fatico is necessary is because I think some of this could be

11   handled in argument.  You know, you have the source of some of

12   this is --

13             THE COURT:  The transcript?

14             MR. TROWEL:  Well, you have a family member, who is

15   obviously biased, and I don't mean that in a critical way, I

16   just mean that in a factual way.  This is a person whose

17   interest is Mr. Rodriguez's release, so the Court could

18   certainly weigh that and take it for what it's worth.

19             And then Mr. Epstein points out that the mental

20   health records go back 35 years.  So, I hear in that a

21   concession that the conditions he's pointing to are not new.

22   So they predate this, they predate the criminal activity.

23   They occurred during it, during that period.  And there's no

24   factual dispute he committed the crime, so he committed them

25   with whatever issues he has.  And they don't postdate it, so

Proceedings 10

1  they're not a new factor that following his release would
2  warrant a lower sentence.
3          So if it's true that they existed --
4          THE COURT:  And there are the wires that were in
5  Mr. Miller's letter that shows -- not in audio, but in the
6  cold record, the conversations between Mr. Rodriguez and other
7  members of the conspiracy.
8          MR. TROWEL:  Correct, that would undermine this.
9          So, I mean, it potentially -- if we were to have a
10  Fatico, it could be as simple as just playing a number of
11  recordings for Your Honor.  Maybe it wouldn't require an
12  examination or something like that, but, I mean, the
13  Government certainly would like to have Mr. Rodriguez
14  sentenced.
15          And so, again, I apologize for the delay.  And this
16  is not an excuse, but an explanation.  I left the office for
17  eighteen months and as the person who conducted the
18  investigation --
19          THE COURT:  Which is why I welcomed you back.
20          MR. TROWEL:  Thank you.
21          -- and indicted the case and knows it better than
22  anyone, it struck me in a way that it wouldn't have struck one
23  of my colleagues.  And so that's the reason for belatedly
24  raising it.  That doesn't let the Government off the hook;
25  we're all one government, but that's just by way of

```
                      Proceedings                    11
```

 1  explanation.  So --

 2          MR. EPSTEIN:  Your Honor, one point that I would

 3  make in response to Mr. Trowel's argument, you know, the

 4  mental illness documentation goes back many years.

 5  Neurological conditions can be degenerative, you know, and I

 6  do suspect that Mr. Rodriguez's is on a one-way trip to a

 7  place where none of us want to go, or at least not at his age.

 8  Most of us probably will, but probably 35 or 40 years later.

 9          THE COURT:  Please go without me, Mr. Rodriguez.

10          MR. TROWEL:  And that is actually a very important

11  point, Your Honor, and maybe this is where we could

12  potentially resolve this.

13          To the extent the argument is that Mr. Rodriguez has

14  a lifetime of criminal history and drug use, which we don't

15  dispute, and that has taken a toll on him, that will be a

16  degenerative process.  As a matter of common sense, I don't

17  dispute that.  That is different than arguing that his mental

18  capacity is relevant to the Court's assessment of his criminal

19  activity.  Those are two different points.  Your Honor can

20  certainly consider his present and future mental status under

21  3553(a) in assessing an appropriate sentence.  I think that's

22  different than Mr. Epstein suggesting that his use of

23  firearms --

24          THE COURT:  As, frankly, I understood -- and maybe I

25  underestimated Mr. Epstein's argument, I understood

```
                           Proceedings                    12
```

1  Mr. Epstein's argument about neurological conditions and the

2  IQ, I use that as a catch-all, not as in derogation of

3  Mr. Rodriguez's conduct, but something that the Court should

4  consider with respect to how incarceration would affect him

5  more harshly than another or the more ordinary inmate facing

6  the same conditions.

7       MR. EPSTEIN:  I think the Court grasped exactly what

8  I was trying to say.  You know, the Court may recall that the

9  first thing I pointed to the Court was the Bureau of Prisons'

10 own report and how it deals with --

11      THE COURT:  The Inspector General's report.

12      MR. EPSTEIN:  Correct, you know, and that it was

13 with that context that I made the presentation about

14 Mr. Rodriguez.  I don't think I ever challenged the guidelines

15 in this case --

16      THE COURT:  I don't recall that either.

17      MR. EPSTEIN:  -- and I didn't do anything that

18 suggested Mr. Rodriguez didn't --

19      THE COURT:  Wasn't fully responsible.

20      MR. EPSTEIN:  -- wasn't fully responsible for what

21 he did.

22      THE COURT:  He was fully responsible for what he

23 did.

24      MR. TROWEL:  Understood.

25      MR. EPSTEIN:  I don't think I've ever suggested

```
                        Proceedings                    13
```

1  that.

2       MR. TROWEL:  And this is very helpful to me because

3  I think it frames the arguments that we'll make to Your Honor

4  at the appropriate point, hopefully in a few moments.

5       And so I think, with that, if what we're looking at

6  is an argument as to status going forward, then I think the

7  Government doesn't need to contest that.  Your Honor will take

8  that information for what it's worth and the Government can

9  concede, even just as a matter of common sense, that a man of

10 his age with his life experience will suffer from some of

11 these issues.

12      I don't think Mr. Epstein has spoken to what may be

13 a different issue, and perhaps this is why I believe these to

14 be linked, but about the drug use at the time of the crimes.

15 So, as I read Mr. Epstein's letter was to suggest he's using

16 PCP at the time of the crimes, he's mentally ill, he's -- that

17 paints a picture of the conduct in my mind.  There's, at

18 least, an inference that what he's trying to do there is paint

19 a picture of conduct --

20      THE COURT:  Diminished capacity?

21      MR. TROWEL:  If not diminished capacity, at least

22 mitigation; he's not in full control or how could he -- I'm

23 not exactly sure what he was getting at, but he was tying

24 this, in my mind as I read it, to the crimes of conviction.

25 And so I think if we --

```
                    Proceedings                    14
```

1         THE COURT:  I missed that, Mr. Trowel.

2         MR. TROWEL:  Okay.

3         MR. EPSTEIN:  Your Honor, I guess I missed it also.

4         THE COURT:  Well, maybe you should not talk to him

5    at this point.  You may give him ideas.

6         MR. EPSTEIN:  But, Your Honor, I don't think that,

7    you know, my point was that he wasn't fully responsible for

8    his crime.  You know, and I think whether he used PCP for many

9    years or used it on the day of the crime is quite irrelevant.

10   There's no question that he was running this group and there's

11   no questions that he did what he did in terms of the guns and

12   the drugs.

13        You know, the question is, in going forward, who is

14   he now and what will he be looking like over the next 10,

15   15 years, 12, 15 years.  That's really the issue that I have

16   been trying to frame, you know, and I think the fact that I

17   didn't challenge the guidelines in any way speaks to that.

18        MR. TROWEL:  Then I think we can proceed, Your

19   Honor, with that, from the Government's perspective.

20        MR. EPSTEIN:  We're ready to go, Your Honor.

21        MR. TROWEL:  Thank you.

22        THE COURT:  Well, that is the longest no to a

23   request of whether anybody wanted a Fatico hearing I have ever

24   had, but we appreciate the discussion of counsel.  Not that I

25   would have expected anything less from either of you, so it is

Proceedings                                    15

1   always good when I see good lawyers making good arguments.  It

2   makes for a happy Friday, so I appreciate it.

3           Let me also establish on the record that both sides

4   have received a copy of the pre-sentence report that was

5   prepared by the Probation Department.  It is kind of obvious,

6   but most importantly, Mr. Epstein, that you have had a full

7   and fair opportunity to review it with Mr. Rodriguez.

8           MR. EPSTEIN:  Yes.

9           THE COURT:  I also recite for the record that

10  Probation has not made available to the Court any confidential

11  information, either about the offense or the personal history

12  of the defendant, that has not been shared with both sides, so

13  that is the pre-sentence investigation report that we are

14  working off of.

15          And I take it into the sentencing process by asking,

16  first, whether or not there are any objections or exceptions

17  to it; and I do that in three parts.  The first area are the

18  paragraphs that relate to the offense of conviction and the

19  personal history and characteristics of the defendant.

20          Any objections or exceptions to those paragraphs?

21          MR. EPSTEIN:  No, Your Honor.

22          MR. TROWEL:  No, Your Honor.

23          THE COURT:  Now, the second area of inquiry, and

24  Officer Turton will refresh me, the paragraphs that compute

25  the offense level and the recommendation, I think it was 31,

```
                        Proceedings                    16
```

1   was it?  I cannot remember, I think it was 31.

2            USPO TURTON:  33, Your Honor.

3            THE COURT:  33, Offense Level 33.

4            Any objections or exceptions to those paragraphs or

5   to that recommendation?

6            MR. TROWEL:  No, Your Honor.

7            MR. EPSTEIN:  No, Your Honor.

8            THE COURT:  So that recommendation is adopted.

9            Lastly, the paragraphs that compute the criminal

10  history category and my recollection is it is Category IV,

11  Level IV.

12           USPO TURTON:  Yes, Your Honor.

13           THE COURT:  And that recommendation of Level IV, any

14  objections or exceptions to that paragraph or to that

15  recommendation?

16           MR. EPSTEIN:  No.

17           MR. TROWEL:  No, Your Honor.

18           THE COURT:  Then that recommendation is adopted.

19           It is also fairly obvious from the record here that

20  the Court has received a written submission, defense

21  memorandum, which includes various attachments, including the

22  Goldstein report, I received a letter from the defendant's

23  daughter Crystal, and I have also received a sentencing letter

24  on behalf the Government.

25           Does anybody believe they have sent to me other

```
                    Proceedings                    17
```

1  things in writing that I have not recited?

2         MR. EPSTEIN:  Your Honor, I've sent to the Court

3  various reports and recommendations from corrections officers

4  at the MCC.

5         THE COURT:  Yes, the certificates and the like, and

6  the reports --

7         MR. EPSTEIN:  Yes.

8         THE COURT:  -- that were attached?

9         MR. EPSTEIN:  Correct.

10         THE COURT:  Yes, they were.  The Court has those as

11  well.

12         Nothing else?

13         MR. TROWEL:  Nothing else, Your Honor, no.

14         THE COURT:  All right.  That being the case,

15  Mr. Epstein, we are to you for your remarks on behalf of

16  Mr. Rodriguez.

17         MR. EPSTEIN:  Before I begin, I would just like to

18  point out that Mr. Rodriguez's mother is sitting in the front

19  row of the courtroom, and also a representative from the Focus

20  Forward program, which is a program for inmates at the MDC --

21  MCC, excuse me.

22         THE COURT:  MCC.

23         MR. EPSTEIN:  Yes.

24         Now, we've talked a little bit about Mr. Rodriguez's

25  long history of mental illness and at least what we know is

Proceedings                                        18

1   his recent decrease in neurological functioning.  And I think

2   for many, many years he disguised that or attempted to

3   disguise that through a posture of belligerence.  I mean, you

4   can certainly look through his disciplinary record when he was

5   in New York State prison, and it's clear that this was a

6   person who had absolutely no respect for any type of authority

7   and was certainly a menace to the people who came near him.

8           You look at the person who's been at the MCC for the

9   last three years and a completely different image emerges.  On

10  the most banal level, he is somebody who has been in the MCC

11  for three years and has no infractions at all, which in all of

12  our experience here is somewhat unusual for somebody to manage

13  to be there for three years.  But the references that he gets

14  from the MCC are also quite unusual, and he gets them from

15  people who are not in the business of being taken in by the

16  inmates.  One of the recommendations, in fact, comes from

17  Dr. Elissa Miller, who is the chief psychologist at the MCC,

18  and just my own experience with people who work in prisons,

19  psychologists, is they learn to be extremely skeptical about

20  the people that they work with; they're always concerned that

21  they are being played, and she describes him as highly

22  motivated, somebody who is a model inmate.  I mean, what is a

23  model inmate doing?  He, basically, spends his time -- and

24  it's not as much time as one might think because of his

25  back -- scrubbing toilets.  He works in sanitation.  And as

Proceedings                                        19

1   one of the guards explained to me, if you didn't have people

2   like Mr. Rodriguez doing what he does, you know, the place

3   would just be a cesspool.  This is the type of thing that we

4   take for granted; we know it has to be done, and we know that

5   people do it, but what was most remarkable, from my

6   perspective, is the officer says he does it with dignity.

7   I've never seen that in a recommendation before, that a person

8   behaves with dignity when he's doing the most menial type of

9   work, and what that says to me, at least, is that -- Your

10  Honor, is everything okay?

11          Your Honor, it's just highly unusual for anyone to

12  receive a recommendation like that and it strikes me that,

13  instead of responding to his own limitations with

14  belligerence, he has now come to a point in life where he's

15  much more accepting of himself and he has a much stronger

16  recognition of what he has done to himself and what he has

17  done to the rest of society.

18          The people in the Focus Forward program tell me that

19  he spends a lot of time speaking to younger inmates just

20  telling them:  Look at me, see what I did to myself, see what

21  I did to people on the outside; do you really want to end up

22  like me?

23          Which, again, comports with what the other

24  corrections officers talk about when they say that he is

25  somebody who now comports himself with dignity, which is

SAM    OCR    RMR    CRR    RPR

Proceedings                                    20

1   completely different from the image that emerges from the New

2   York State report, which is how he was behaving twenty years

3   ago.

4           As the Court mentioned a couple of minutes ago, I

5   have submitted the report from the IG, from the Inspector

6   General for the Bureau of Prisons, which discusses how the

7   Bureau of Prisons has considerable difficulty dealing with

8   what they describe as the *elderly inmate*, which frankly, when

9   I first read it, I was taken aback.  I mean, the first time I

10  read it, I think I was 64.  Now I'm a little bit older and I

11  wasn't about to consider myself as elderly, but the Inspector

12  General and the Bureau of Prisons, I think, make a very, very

13  good point that life for somebody who hits a certain point in

14  prison is much more difficult than it is for a younger inmate,

15  for a number of reasons, and they could have been describing

16  Mr. Rodriguez.  They talk about the difficulty and the expense

17  of hepatitis C medication.  Mr. Rodriguez suffers from

18  hepatitis C.  They talk about the difficulty in finding proper

19  accommodations, lower-level bunks for people who are the older

20  inmates, and Mr. Rodriguez has a problem with his back.  But

21  most of all, from Mr. Rodriguez's perspective, if he's

22  somebody who does have decreasing mental functions, which I

23  think are going to only further decrease over the next 10, 12,

24  15 years.

25          Certainly, these are my observations of him that

Proceedings                          21

1  even to this day I have conversations with him and two weeks

2  later I come back and I'm having the same conversation.  I'm

3  not a psychologist, but that's why I asked the psychologist to

4  look into it, but it seems to me that whatever his functioning

5  was, the road on which he's going is, at least from our

6  perspective, very, very dark.

7          The point is, at least in terms of bottom line, that

8  a day in jail or a year in jail for Mr. Rodriguez is

9  significantly different than it is for a different inmate.  It

10 just becomes that much harder, that the punishment becomes

11 that much more severe.  I am saying all of this in the context

12 of a mandatory 12-year sentence; that whatever the Court

13 decides, the Court cannot impose a sentence of less than

14 12 years in jail; that by the time Mr. Rodriguez gets out, he

15 will be over 60 years old.  By the Bureau of Prisons'

16 calculations, he will be 10 or 15 years older than that in

17 terms of his mental makeup.  In terms of his physical makeup,

18 he will be a person in his seventies, but he's not going to be

19 a person in his seventies who can spend his time arguing

20 cases, deciding cases, or taking trips to broaden his own

21 perspective on the world.

22          It is going to be a very, very limited life when he

23 gets out because of his mental and physical condition, which

24 is why I'm urging the Court to impose the mandatory minimum

25 sentence.  I recognize that the guidelines are what they are,

Proceedings                                    22

1   but the guidelines largely reflect who Mr. Rodriguez was.

2   That's why his criminal history is what it was.  And what I

3   will suggest to the Court is that, given what the people in

4   MCC say about him, you know, he is quite a different person

5   right now.  I mean, sometimes it happens because of the

6   federal incarceration and sometimes it happens because a

7   person grows, and sometimes it happens because, in

8   Mr. Rodriguez's condition, he's come to grips with his own

9   limitations.

10           So, therefore, I urge the Court to impose the

11  mandatory minimum sentence of 12 years.

12           THE COURT:  Thank you, Mr. Epstein.

13           Now, Mr. Rodriguez, you obviously have had the

14  benefit of Mr. Epstein's skill and his advocacy, but

15  notwithstanding all of that, before sentence is imposed on

16  you, you have the personal right of a statement, a personal

17  right to address the Court before the Court imposes the

18  sentence.  It is not an obligation to speak, and you need not

19  rise if you do wish to speak, but if you do wish to speak this

20  is your opportunity.

21           THE DEFENDANT:  Yes, sir.

22           I would like to begin, I feel very bad for what I

23  did to society, the people I've hurt through my -- may I say

24  my addictions, what I took part in, I feel badly.  The lives

25  that I've broken up mentally, perhaps physically, I wish I

SAM    OCR    RMR    CRR    RPR

Proceedings                    23

1   could take it back, sir, but that is something that I can't.

2   This is something that I am going to pay the price for myself.

3          It hurt me that I let all my loved ones down; kids,

4   who may be back there, and my mom, the only thing that I love

5   dearly.  I just pray that this will pass by some day and I'll

6   make it home in time that I can take care of her.  You know,

7   those are my goals right now.

8          As you know already, I'm a sick person.  I have

9   Hep C.  They've been denying my medication for three years at

10  MCC.  I try to stay focused and busy by doing little tasks,

11  working here and there throughout the whole facility.

12         In my spare time I speak to people of my experience,

13  how many people that I -- lives that I ruined throughout the

14  course of my incarceration.  I just pray that some day some of

15  these kids, 10 out of, at least, 8 that can hear me, won't

16  have to go through the torture I'm going through nowadays to

17  see my mother watch me get sentenced and I may never come out

18  the system.

19         Thank you for listening to me.

20         THE COURT:  Thank you, Mr. Rodriguez.

21         Mr. Trowel, do you wish to be heard on behalf of

22  United States?

23         MR. TROWEL:  Yes, Your Honor.

24         THE COURT:  Please.

25         MR. TROWEL:  Thank you.

Proceedings                    24

1      As Your Honor will recall, Mr. Rodriguez is the

2 sixth defendant to be sentenced on this case and the related

3 case of Jonathan Johnson.  Your Honor sentenced Mr. Johnson in

4 January, I believe.  And of those defendants on this

5 indictment, you have José Perez, who Your Honor sentenced to

6 84 months; Grace Jaen, 33 months; Jermaine Stephenson, 72

7 months; Jonathan Johnson, 87 months.

8      Mr. Rodriguez is the undisputed leader of this

9 organization.  He, in the PSR, has a four-level enhancement

10 for his leadership role.  He gave the orders.  He kept the

11 money.  He made the arrangements with suppliers.  He had no

12 peer in this organization.  There were only people who did his

13 bidding, so it was not a hierarchy.  This is not a gang that

14 would have existed without him.  It is a group of people -- a

15 ragtag group, I'll concede, but a group formed by

16 Mr. Rodriguez for the purpose of pursuing his criminal

17 activity.  Without him, it would not exist; full stop.

18      He is, by far, the most culpable individual involved

19 in this case.  So just to speak for a minute about the

20 conduct, he was, Mr. Rodriguez and his group, they were

21 reasonably prolific drug dealers.  They had a steady steam of

22 supply; they had heroin, powder cocaine, crack, marijuana.

23 They had clients who were often themselves distributors, so he

24 was selling in quantities that could in turn be resold; had

25 clients in New York City, in Nassau County.  There was a

Proceedings                                    25

1   steady stream of them as well.  By his own admission, and this

2   is cited in our letter, he was -- he had significant cash flow

3   from these efforts.

4           He also possessed, distributed and used firearms.

5   Those were imported from out of state.  Your Honor heard about

6   this when sentencing Jonathan Johnson.  That is another source

7   of supply that he managed and connected with.  Mr. Johnson was

8   willing to drive some 12 hours from North Carolina to New York

9   City, sometimes on reasonably short notice, to bring firearms

10  ordered by Mr. Rodriguez, some of which were stolen in North

11  Carolina.  That, of course -- some of those, there were

12  assault rifles.  There was one or more "Judges," we spoke

13  about that before, it's a handgun that fires a shotgun shell.

14  There was a recording in which Mr. Rodriguez agreed to

15  purchase a Glock with a 30-round clip, Your Honor may recall.

16  These are serious firearms intended for the sole purpose of

17  drug-related violence.  These men are not hunters.  They're

18  not sportsmen.  The purpose of these firearms was to further

19  their drug trade and to further inflame the drug trade in Far

20  Rockaway.

21          The guns and drugs -- actually, one more point on

22  that.  We put in our detention letter that although, at the

23  time of Mr. Rodriguez's arrest, crimes, violent crimes were

24  decreasing in New York City, were decreasing nationwide, the

25  101st Precinct where Mr. Rodriguez lived was an exception to

Proceedings                                             26

1   that.  So for the period ending just two weeks before he was

2   arrested, the NYPD CompStat Report indicated that for the

3   101st Precinct there was a 50 percent increase in shootings, a

4   57 percent increase in felony assaults, a 14 percent increase

5   in robberies.  That's not Mr. Rodriguez's fault, and I am not

6   suggesting that.  He is a part of the problem in Far Rockaway,

7   not the only problem, but he was fueling that fire both with

8   his drug dealing and, more outrageously, the firearm -- the

9   pathway of firearms from the south here in violation of the

10  City's policy, in violation of State policy, solely for this

11  violent end.

12          Now, he did more than contribute the tools of that

13  trade to the drug trade in Far Rockaway, he used them as well.

14  So, Your Honor may recall from the plea agreement that he

15  stipulated to shooting a man in front of his house in 2015;

16  directing a member of his organization to shoot at a man on

17  Route 878, which was essentially a road rage incident in which

18  another co-defendant fired at a car.  And then Your Honor may

19  recall the recording that is cited in the letter where he has

20  one of his associates, Mr. Perez, brandish a firearm at a

21  customer who has failed to pay.  This is, of course, relevant

22  to our earlier discussion about Mr. Rodriguez's memory; it is

23  conveniently long when it comes to who owes him money and who

24  has the tools of his trade.

25          These factors alone, I submit, Your Honor, would

Proceedings                                    27

1    warrant a sentence well above what Mr. Epstein is asking for.

2    This is an extraordinarily serious conduct in a place where it

3    is chronic.  But for Mr. Rodriguez, there is more than that.

4    In the world of drug dealers and gun runners that Your Honor

5    sees and that this Court sees, Mr. Rodriguez's conduct was

6    depraved.  He used children.  There is no dispute to the

7    guidelines enhancement for using children.  He had regularly,

8    and this is evident from the Government's cooperator videos,

9    children present at drug deals.  He had, in one recording, the

10   daughter of Ms. Jaen fetch heroin for another individual

11   indicted with him.  In another video, he had the daughter

12   putting the spoils of his drug dealing, a stack of cash, in

13   his safe.

14          Mr. Rodriguez had absolutely no compunction about

15   using the children in his house as part of the organization

16   that he was running here.  And that lack of compunction also

17   went to the people who were part of his organization.

18   Mr. Devalle, Mr. Ray Johnson, and Mr. Perez were chronic

19   heroin users, chronic heroin users, and this is where I think

20   of the Government's view of Mr. Rodriguez's purported use at

21   the time, really, the rubber meets the road here.  There is no

22   evidence whatsoever that Mr. Rodriguez was using.  There is by

23   contrast a mountain of evidence, including contemporaneous

24   arrests during the charged period, that the people working for

25   him were using extraordinary amounts.

```
                    Proceedings                    28
```

1       Just to give you an example:  On one occasion,

2  Mr. Ray Johnson, a co-conspirator, wired Mr. Rodriguez $33,000

3  to pay for his personal heroin use.  That's an employee paying

4  money from a legal settlement he received to Mr. Rodriguez to

5  pay a drug debt.  The amount of heroin that his employees were

6  using was incredible.

7       And Mr. Rodriguez was manipulating these men.  They

8  were culpable, fully responsible for their actions, but they

9  were men who were tied to their addictions and Mr. Rodriguez

10  was not.  The children, the addicts, these show the kind of

11  man Mr. Rodriguez was, show the kind of man Mr. Rodriguez is,

12  and, in the Government's view, aggravate substantially the

13  conduct that he participated in.

14       Bear with me for just a moment, Your Honor.

15       THE COURT:  Certainly.

16       MR. TROWEL:  I just want to respond to a couple of

17  things.

18       We've spoken about some of the things in

19  Mr. Epstein's letter.  There is another one that stuck out to

20  me and that is, I believe, Mr. Rodriguez's daughter saying

21  that he instilled in her a commitment to family.  That stood

22  out to me in light of some of the things I've just mentioned

23  to Your Honor, including, specifically, the use of Ms. Jaen's

24  children who were living with Mr. Rodriguez for purposes of

25  furthering his drug dealing.  It's simply inconsistent in my

Proceedings 29

1   mind, and for whatever truth there is in the statement is

2   substantially undermined by the conduct in this case.

3        He also asserts that the guidelines inflate -- are

4   inflated, that's his word, by the criminal history; but, in

5   the Government's view, the criminal history reflects what

6   Mr. Rodriguez -- reflects his life.  That is the life of a

7   chronic criminal, a criminal who was committing the crimes I'm

8   describing to you and that are described in the Government's

9   letters and other filings, nearly every minute of every day.

10  I don't mean to exaggerate, but that is very close.  There was

11  no legitimate income, there was only drug dealing.  The wires

12  show that this was what he was doing every day.  He was

13  attempting, towards the end of the period here, to wash his

14  drug money by setting up a rental car company.  That was also

15  -- there were no papers, this was all very flimsy, but he was

16  trying to wash that money in this car company; another point

17  that suggests he was not somebody who lacked memory.  He knew

18  where his cars were, he was operating with these individuals

19  to buy new cars and buy plates and so on.  This is a man who

20  knew his business and was operating it day to day.

21        The sentence that Your Honor imposes, the Government

22  respectfully submits, should reflect all of these factors, the

23  seriousness of these offenses, and it should, frankly, ensure

24  that these are the last crimes that Mr. Rodriguez commits.

25        Thank you, Your Honor.

Proceedings                                    30

1          THE COURT:  Thank you, Mr. Trowel.

2          All right, pursuant to the Court's normal practice,

3   I will announce my intended sentence, the reasons for it, and

4   I do that solely for the purpose of trying to avoid error, in

5   case I am verging on an illegal sentence, an unlawful

6   sentence, that counsel will have the opportunity to point that

7   out and for me to consider it and avoid the error.  It is not

8   an opportunity to relitigate issues that you may be unhappy

9   with, but recognize they were within my lawful prerogative.

10          MR. EPSTEIN:  Your Honor?

11          THE COURT:  Yes.

12          MR. EPSTEIN:  Mr. Rodriguez is poking at me and just

13   wanted me to make two short points.

14          Mr. Trowel said that he challenged the idea that

15   Mr. Rodriguez instilled a love of family in his daughter.

16   Mr. Rodriguez's mother is here, and you will see from the

17   pre-sentence report that Mr. Rodriguez's childhood was not an

18   easy childhood with his mother.  Nonetheless, you see a

19   tremendous loyalty between the two, which I think points out

20   that human relations are much more complex than the Government

21   is making them out to be.

22          Thank you.

23          THE COURT:  Thank you.  The Court highly agrees that

24   human relationships are very complex.

25          The record will continue to reflect that, though

Proceedings                                      31

1   advisory, the Court has also fully considered the sentencing

2   guidelines promulgated by the United States Sentencing

3   Commission relevant to this case, but more importantly, the

4   Court has fully considered all of the factors, standards and

5   goals that are set forth in Title 18, United States Code

6   Section 3553(a), which actually controls the imposition of

7   sentence in this case.

8           The Court has fully considered the pre-sentence

9   investigative report prepared by the Probation Department.

10  The Court has also considered the submissions of the defense

11  and the Government in connection with sentence.  Those

12  submissions were under seal and the recounting of various

13  personal health data certainly justifies that filing under

14  seal and the permission to file for that reason being

15  justified as granted.  The Court is also, in addition to

16  considering those submissions and all of the attachments to

17  the defense submission, the Court has fully considered the

18  arguments of counsel and the remarks made at the time of

19  sentence by Mr. Rodriguez.

20          And this is the Court's intended sentence and the

21  reasons for it.

22          Mr. Trowel has recounted on the record, and the

23  Court certainly was aware, is aware, as it was considering the

24  sentence in this case, not only did the pre-sentence report

25  and now the submissions, but I have had the opportunity to

Proceedings                                                        32

1    listen to other allocutions, to listen to other remarks at the
2    time of sentencing co-defendants or co-conspirators involved
3    with Mr. Rodriguez, and what I was struck with is the breadth
4    and the depth of this organization and its activities in Far
5    Rockaway, and they are clearly terrorizing.  As Mr. Trowel
6    mentioned that earlier, I was stunned to learn that there even
7    existed a thing called the "Judge," that there would be some
8    sort of weapon that would be somewhere legal in the United
9    States of America where a handgun could fire a shotgun round.
10   I find that frightening.  I find it frightening that in a
11   community in this city that someone can order up, several
12   states away, a stolen semi-automatic weapon with a 30-clip
13   expanded opportunity to kill to attach to it.  All
14   frightening.  This is larded on top of the impacts of the
15   Walmart store of drugs that Mr. Rodriguez and his cohorts had
16   and inflicted on the people of Far Rockaway.  Not that he
17   didn't have willing customers; he and his cohorts were the
18   suppliers on the street and to mid-level dealers as well, so
19   that would permeate out.  What a combination of drugs and
20   firearms of the most frightening kind.
21          And there is, in this Court's view, the extremely
22   aggravating circumstance that as bad as all of that is, under
23   the leadership of Mr. Rodriguez, that children would be
24   dragged into the process, innocent kids becoming part of how
25   this crime network operated in Far Rockaway.  Everything that

Proceedings                                33

1    I have seen strongly suggests that what Mr. Trowel says is

2    true; that Mr. Perez, as bad as his conduct was in being

3    willing to follow orders to fire a weapon, Mr. Rodriguez's

4    conduct as the organizer and the leader, the orchestrater, the

5    conductor, is far worse.

6           I have also reviewed the Goldstein Report and the

7    arguments about it, and I understand that Mr. Rodriguez's

8    experience at the MCC is different than what it was in past

9    incarcerations of the state system and I presume that is a

10   combination of growing older and, perhaps, through the

11   assistance of able counsel, to get a feel for what those

12   guidelines could actually mean to him at the time of sentence,

13   and that some sort of tangible change would be absolutely

14   essential.  So that *in terrorem*, the deterrent effect of

15   sentencing, of incarceration, can actually work still.  As

16   much criticized as deterrence is as a factor, it has always

17   been a strong factor as far as I am concerned.

18          But all of those ailments, disabilities and

19   intellectual disabilities or learning disabilities, or actuals

20   intelligence quotient, have never stymied Mr. Rodriguez and

21   his criminal activity and, in particular, his leadership of

22   this terrorizing organization that held people of Far Rockaway

23   in its grips.  So that in this case, the removal, the

24   incapacitation of the defendant is important to take him off

25   the street so that, with all his limitations that he has

Proceedings                              34

1  proven over the course of decades that he can overcome, he

2  cannot inflict the kind of crime wave again and the pain that

3  goes with it.

4        I do take into consideration the limitations that

5  Mr. Epstein has spoken about and Dr. Goldstein has written

6  about, and it is certainly more difficult for older, much less

7  disabled people, to handle incarceration.  There is no

8  question about that, and I have toyed with this as to where

9  that would bring me.  And it became clear, and I think this

10 was set forth in the pre-sentence report, that the only

11 departure for variance that Probation noted was -- given the

12 history and the conduct and the length of this epic record of

13 law breaking, the only variance of departure that was

14 warranted was a departure that would take the sentence above

15 the guidelines.  That certainly is also supported by the

16 involvement of young children in the process.  I think that is

17 where the Goldstein Report comes in.  That certainly would not

18 be justified in the Court's view.

19       So where does it -- it brings me down.  It brings me

20 down off that recommendation that I consider an

21 above-the-guidelines sentence.  And I think, given the epic

22 nature of what is involved here, having not only analyzed

23 Mr. Rodriguez's record, but also the facts and circumstances

24 of what this organization did in Far Rockaway and his

25 responsibility, chief responsibility for it, it settles me at

Proceedings                                    35

1   the bottom of the recommended guideline.

2           So for those reasons, it is the intended sentence of

3   the Court to impose on Count One a term of custody of

4   188 months; and on Count Two, as required, the mandatory

5   minimum of seven years.  It runs consecutively to the term

6   imposed on Count One.

7           It is the Court's intended sentence to impose a

8   period of five years of supervised release on each count.

9           There has been an order of forfeiture entered in

10  this case, which deals with the contraband, so that those

11  weapons that were seized will be forfeited.  The Court, on the

12  basis of the Pre-sentence Report, does not intend to impose a

13  fine, because the defendant is without the ability to pay a

14  fine.  And the Court intends to impose, as required on each

15  count, a $100 special statutory assessment for a total of

16  $200.

17          And the Deputy Clerk will read into the record any

18  special conditions of supervised release.

19          THE COURTROOM DEPUTY:  The defendant shall comply

20  with the forfeiture order.  Upon request, the defendant shall

21  provide the U.S. Probation Department with full disclosure of

22  his financial records, including commingled income, expenses,

23  assets and liabilities to include yearly income tax returns.

24          With the exception of the financial accounts

25  reported and noted within the Pre-sentence Report, the

Proceedings                                        36

1   defendant is prohibited from maintaining and/or opening any

2   additional, individual and/or joint checking, savings or other

3   financial accounts for either personal or business purposes

4   without the knowledge and approval of the United States

5   Probation Department.

6          Defendant shall cooperate with the probation officer

7   in the investigation of his financial dealings and shall

8   provide truthful monthly statements of his income and

9   expenses.  Defendant shall cooperate in the signing of any

10  necessary authorization to release information forms

11  permitting the U.S. Probation Department access to his

12  financial information and records.

13         The defendant shall comply with a curfew via

14  electronic monitoring as directed by the U.S. Probation

15  Department for a period of six months.  The defendant shall

16  remain at his place of residence from 7:00 p.m. to 7:00 a.m.

17  The Probation Department may designate another 12-hour

18  respective time period if the defendant's employment,

19  education or observance of religious services preclude the

20  above specified times.

21         The curfew via electronic monitoring shall commence

22  on a date approved by the Probation Department.  During the

23  curfew period the defendant shall wear a electronic monitoring

24  bracelet or a similar tracking device and follow all

25  requirements and procedures established for the curfew via

Proceedings                                      37

1   electronic monitoring by the Probation Department.  In

2   addition, the defendant shall pay all costs including the

3   price of the electronic monitoring equipment to the degree he

4   is reasonably able.

5            The defendant shall disclose all financial

6   information and documents to the Probation Department to

7   assess his ability to pay.

8            The defendant shall participate in an outpatient

9   drug treatment program approved by the U.S. Probation

10  Department.

11           The defendant shall contribute to the costs of such

12  treatment not to exceed an amount determined reasonable by the

13  Probation Department's sliding scale for substance abuse

14  treatment services, and shall cooperate in securing any

15  applicable third-party payments, such as insurance or

16  Medicaid.

17           The defendant shall disclose all financial

18  information and documents to the Probation Department to

19  assess his ability to pay.

20           The defendant shall not consume any alcohol or other

21  intoxicants during and after treatments, unless granted a

22  prescription by a licensed physician and proof of same is

23  provided to the Probation Department.

24           And a search condition:  The defendant shall submit

25  his person, property, house, residence, vehicle, papers,

Proceedings                                38

1   computers, other electronic communications or data storage

2   devices, or media, or office to a search conducted by a United

3   States probation officer.  Failure to submit to a search may

4   be ground for revocation of release.  The defendant shall warn

5   any other occupants that the premises may be subject to

6   searches pursuant to this condition.  An officer may conduct a

7   search pursuant to this condition only when reasonable

8   suspicion exists that the defendant has violated a condition

9   of his supervision and that the areas to be searched contain

10  evidence of this violation.  Any search must be conducted at a

11  reasonable time and in a reasonable manner.

12          THE COURT:  That's the intended sentence of the

13  Court, the reasons for it.

14          Does either side take any legal objection or

15  exception to it?

16          MR. TROWEL:  The Government doesn't, no, Your Honor.

17          MR. EPSTEIN:  No legal objection.

18          THE COURT:  There being no legal objection, the

19  intended sentence of the Court as announced is adopted as the

20  sentence imposed.  The intended reasons for the intended

21  sentence are also adopted as the reasons for the sentence as

22  imposed.

23          Mr. Rodriguez, please take notice that you have a

24  right to appeal your conviction and sentence if you believe

25  your guilty plea was involuntary or if there was some other

Proceedings                                39

1   fundamental defect in it.  You have a right to appeal the

2   sentence, itself, if you believe it is contrary to or that you

3   have entered into a plea agreement that contains an appellate

4   waiver, which means you have given up your right to appeal the

5   conviction or challenge the sentence.  Generally, those

6   appellate waivers are deemed to be enforceable, but if you

7   believe the appellate waiver in your plea agreement is not

8   enforceable, you may present that argument to an appropriate

9   appellate court.

10          If you do wish to file an appeal and cannot afford

11  to do so, you may advise the Clerk of Court of that fact and

12  the Clerk of Court will prepare and file a notice of appeal *in*

13  *forma pauperis* at your request.  Please take further notice

14  that ordinarily any notice of appeal must be entered in the

15  clerk's office within 14 days of the entry, in that office, of

16  any order or judgment to be appealed.

17          Mr. Trowel, are there any open counts or charges

18  with respect to this defendant?

19          MR. TROWEL:  There are, Your Honor.  The Government

20  moves to dismiss those at this time.

21          THE COURT:  On motion of the United States, all open

22  counts and underlying charges are dismissed.

23          Mr. Epstein, are there any requests?

24          MR. EPSTEIN:  Yes, Your Honor.  We'd like you to

25  recommend that Mr. Rodriguez be designated to a facility as

```
                        Proceedings                      40

1    close to New York City as possible.

2              THE COURT:  All right.  And the Court is prepared to

3    also recommend that he be made available to the 500 hours

4    program, if he so desires, and also recommends to the Bureau

5    of Prisons that substance abuse services be made available to

6    Mr. Rodriguez during his incarceration.

7              Is there anything else we need to attend?

8              MR. TROWEL:  Not for the Government, Your Honor.

9              MR. EPSTEIN:  No, Your Honor.

10             THE COURT:  All right, then, Mr. Rodriguez, we

11   certainly wish your family well and wish that you, sir, are

12   able to stride through the period of custody the best that you

13   can.

14             You are remanded to the custody of the Attorney

15   General for the imposition of sentence.

16             MR. EPSTEIN:  Have a nice weekend, Your Honor.

17             THE COURT:  You too.

18

19             (Matter concluded.)

20

21                    *    *    *    *    *

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
23

24      /s/ Stacy A. Mace                  February 22, 2019
     _____    _____
25      STACY A. MACE                     DATE
```

SAM    OCR    RMR    CRR    RPR

A-102

Criminal Notice of Appeal - Form A

## NOTICE OF APPEAL

### United States District Court

Eastern _____ District of New York _____

Caption:

United States _____ v.

Jose Rodriguez _____

Docket No.: 15-CR-576 _____

E. Vitaliano _____
(District Court Judge)

Notice is hereby given that Jose Rodriguez _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment [ ✓ ], other [ _____

entered in this action on February 22, 2019 .                                    (specify)
                                  (date)

This appeal concerns: Conviction only [ ✓ ]   Sentence only [ ✓ ]   Conviction & Sentence [ ___ ]   Other [ ___ ]

Defendant found guilty by plea [ ✓ ] | trial | | N/A |

Offense occurred after November 1, 1987?  Yes [ ✓ ]   No [     N/A [

Date of sentence: February 22, 2019 _____   N/A |___|

Bail/Jail Disposition: Committed [ ✓ ]   Not committed |   | N/A |

Appellant is represented by counsel? Yes [ ✓ ] | No |      If yes, provide the following information:

Defendant's Counsel:   Lloyd Epstein, Esq.

Counsel's Address:   Epstein & Weil, LLC

225 Broadway, Suite 1203, New York, NY 10007

Counsel's Phone:   212-732-4888

Assistant U.S. Attorney:   AUSA Kevin Trowel (EDNY)

AUSA's Address:   271 Cadman Plaza East

Brooklyn, NY 11201

AUSA's Phone:   718-254-6351

Signature

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
                       Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| Jose Rodriguez | ) | Case Number:  1:15CR00576-001(ENV) |
| | ) | USM Number:  50398-053 |
| | ) | |
| | ) | Lloyd Epstein, Esq. |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)  1 and 2

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | SEE NEXT PAGE | | |

The defendant is sentenced as provided in pages 2 through    8    of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)  open counts            ☐ is  ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/22/2019
Date of Imposition of Judgment

s/ENV
Signature of Judge

Eric N. Vitaliano, U.S.D.J.
Name and Title of Judge

MAR 12 2019
Date

A-104

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
.                                Sheet 1A

Judgment—Page   2   of   8

DEFENDANT:  Jose Rodriguez
CASE NUMBER:  1:15CR00576-001(ENV)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii) | Heroin, Cocaine Base, Cocaine and Marijuana Distribution Conspiracy | 11/30/2015 | 1 |
| 18 U.S.C. § 924(c)(1)(A)(ii) | Unlawful Use and Brandishing of Firearms | 11/30/2015 | 2 |

A-105

AO 245B (Rev. 02/18)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___3___ of ___8___

DEFENDANT:  Jose Rodriguez
CASE NUMBER:  1:15CR00576-001(ENV)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

One Hundred Eighty-Eight(188) months on count 1 and seven (7) years on count 2. Each term to run consecutively.

☑  The court makes the following recommendations to the Bureau of Prisons:

The Court recommends the defendant be placed in a facility as close to NYC as possible. The Court also recommends the defendant be placed in the 500 hour substance abuse program.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at _____  ☐ a.m.  ☐ p.m.  on _____ .

☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on _____ .

☐  as notified by the United States Marshal.

☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A-106

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___4___ of ___8___

DEFENDANT:   Jose Rodriguez
CASE NUMBER:   1:15CR00576-001(ENV)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

Five (5) years on counts 1 and 2. Each term to run concurrently.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.  ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A-107

AO 245B (Rev. 02/18)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page __5__ of __8__

DEFENDANT:  Jose Rodriguez
CASE NUMBER:  1:15CR00576-001(ENV)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation office, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

A-108

AO 245B(Rev. 02/18)  Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page     6     of     8

DEFENDANT:  Jose Rodriguez
CASE NUMBER:  1:15CR00576-001(ENV)

## SPECIAL CONDITIONS OF SUPERVISION

1. The Defendant shall comply with forfeiture order.

2. Upon request, the defendant shall provide the U.S. Probation Department with full disclosure of his financial records, including co-mingled income, expenses, assets and liabilities, to include yearly income tax returns. With the exception of the financial accounts reported and noted within the presentence report, the defendant is prohibited from maintaining and/or opening any additional individual and/or joint checking, savings, or other financial accounts, for either personal or business purposes, without the knowledge and approval of the U.S. Probation Department. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income and expenses. The defendant shall cooperate in the signing of any necessary authorization to release information forms permitting the U.S. Probation Department access to his financial information and records.

3. The defendant shall comply with a curfew via electronic monitoring as directed by the U.S. Probation Department for a period of 6 months. The defendant will remain at his or her place of residence from 7 p.m. to 7 a.m. The Probation Department may designate another twelve-hour respective time period, if the defendant's employment, education, or observance of religious services preclude the above specified times. The curfew via electronic monitoring shall commence on a date approved by the Probation Department. During the curfew period, the defendant shall wear an electronic monitoring bracelet or similar tracking device and follow all requirements and procedures established for the curfew via electronic monitoring by the Probation Department. In addition, the defendant shall pay all costs, including the price of the electronic monitoring equipment, to the degree he is reasonably able. The defendant shall disclose all financial information and documents to the Probation Department to assess his or her ability to pay.

4. The defendant shall participate in an outpatient drug treatment program approved by the U.S. Probation Department. The defendant shall contribute to the costs of such treatment not to exceed an amount determined reasonable by the Probation Department's Sliding Scale for Substance Abuse Treatment Services, and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay. The defendant shall not consume any alcohol or other intoxicants during and after treatment, unless granted a prescription by a licensed physician and proof of same is provided to the Probation Department.

5. A search condition: The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

A-109

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 7 | of | 8 |
|---|---|---|---|---|

DEFENDANT: Jose Rodriguez
CASE NUMBER: 1:15CR00576-001(ENV)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A-110

AO 245B (Rev. 02/18) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __8__ of __8__

DEFENDANT:  Jose Rodriguez
CASE NUMBER:  1:15CR00576-001(ENV)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __200.00__ due immediately, balance due

      ☐  not later than _____ , or
      ☑  in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

      Special Assessment fee of $200.00 is due immediately. Payment should be submitted to the Clerk of the Court,
      U.S. District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, NY 11201.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

      Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
      and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
      PLEASE SEE ATTACHED ORDER OF FORFEITURE

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

A-111

SLR:LDM:TRP
F. #2015R0555

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against –

JOSE RODRIGUEZ,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

PRELIMINARY ORDER
OF FORFEITURE

15-CR-576 (ENV)

WHEREAS, on or about January 20, 2016, JOSE RODRIGUEZ, (the

"defendant"), entered a plea of guilty to the lesser included offense charged in Count One

and to the offense charged in Count Two of the above-captioned Indictment, charging

violations of 21 U.S.C. § 846 and 18 U.S.C. § 924(c); and

WHEREAS, pursuant to 18 U.S.C. § 924(d)(1), 28 U.S.C. § 2461(c), and 21

U.S.C. § 853(a), the defendant has consented to the forfeiture of all right, title, and interest to

the United States in: (a) one model M68 .38 special handgun with serial number A191997;

(b) five rounds of .38 caliber ammunition, and (c) one shoebox containing miscellaneous

ammunition, seized from the defendant on or about November 18, 2015 (the "Seized Firearm

and Ammunition") as: (i) property constituting, or derived from, any proceeds obtained,

directly or indirectly as a result of the defendant's violation of 21 U.S.C. § 846; (ii) any

property used, or intended to be used, in any manner or part, to commit, or to facilitate the

commission of, such violation; (iii) any firearm or ammunition involved in or used in any

A-112

knowing violation of 18 U.S.C. § 924(d)(1); and/or (iv) substitute assets, pursuant to 21 U.S.C. § 853(p).

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, on consent, by and between the United States and the defendant as follows:

1.      Pursuant to 18 U.S.C. § 924(d), 28 U.S.C. § 2461(c), and/or 21 U.S.C. §§ 853(a) and 853(p) the defendant shall forfeit to the United States all right, title, and interest in the Seized Firearm and Ammunition.

2.      Upon entry of this Preliminary Order of Forfeiture ("Preliminary Order"), the United States Attorney General or his designee is authorized to seize the Seized Firearm and Ammunition, to conduct any proper discovery, in accordance with Fed. R. Crim. P. 32.2(b)(3) and (c), and to commence any applicable proceedings to comply with statutes governing third party rights, including giving notice of this Preliminary Order.

3.      The United States shall publish notice of this Preliminary Order in accordance with the custom and practice in this district on the government website www.forfeiture.gov, and of its intent to dispose of the Seized Firearm and Ammunition in such a manner as the Attorney General or his designee may direct. The United States may, to the extent practicable, provide direct written notice to any person known or alleged to have an interest in the Seized Firearm and Ammunition as a substitute for published notice as to those persons so notified.

4.      Any person, other than the defendant, asserting a legal interest in the Seized Firearm and Ammunition may, within thirty days (30) of the final publication of notice or receipt of notice or no later than sixty days (60) after the first day of publication on

United States v. Jose Rodriguez, 15-CR-576 (ENV)
Preliminary Order of Forfeiture
Page 2

an official government website, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of his or her alleged interest in the property, and for an amendment of the order of forfeiture, pursuant to 21 U.S.C. § 853(n)(6). Any petition filed in response to notice of the forfeiture of the Seized Firearm and Ammunition must be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

5.    The defendant shall not file or interpose any claim or assist others to file or interpose any claim to the Seized Firearm and Ammunition in any administrative or judicial proceeding. The defendant shall fully assist the government in effectuating the surrender and forfeiture of the Seized Firearm and Ammunition to the United States. The defendant shall take whatever steps are necessary to ensure that clear title to the Seized Firearm and Ammunition passes to the United States, including, but not limited to, the execution of any and all documents necessary to effectuate the surrender and forfeiture of the Seized Firearm and Ammunition to the United States. Further, if any third party files a claim to the Seized Firearm and Ammunition, the defendant will assist the government in defending such claims. If the Seized Firearm and Ammunition, is not forfeited to the United States, the United States may seek to enforce this Preliminary Order against any other assets of the defendant up to the value of the Seized Firearm and Ammunition, pursuant to 21 U.S.C. § 853(p).

United States v. Jose Rodriguez, 15-CR-576 (ENV)
Preliminary Order of Forfeiture
Page 3

A-114

6.      The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of the monies and/or properties forfeited hereunder, including notice set forth in an indictment or information.  In addition, the defendant knowingly and voluntarily waives his right, if any, to a jury trial on the forfeiture of the monies and/or property forfeited hereunder, and waives all constitutional, legal and equitable defenses to the forfeiture of same, including, but not limited to, any defenses based on principles of double jeopardy, the Ex Post Facto clause of the United States Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

7.      Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B), this Preliminary Order of Forfeiture shall become final as to the defendant at the time of defendant's sentencing and shall be made part of the defendant's sentence and included in his judgment of conviction.  If no third party files a timely claim, this Preliminary Order, together with Supplemental Orders of Forfeiture, if any, shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2).  At that time, the monies and/or properties forfeited herein shall be forfeited to the United States for disposition in accordance with the law.

8.      The United States alone shall hold title to the Seized Firearm and Ammunition following the Court's disposition of all third-party interests, or, if none, following the expiration of the period provided in 21 U.S.C. § 853(n)(2).

9.      The forfeiture of the Seized Firearm and Ammunition shall not be considered a payment of a fine, penalty, restitution loss amount, or payment of any income taxes that may be due, and shall survive bankruptcy.

United States v. Jose Rodriguez, 15-CR-576 (ENV)
Preliminary Order of Forfeiture
Page 4

A-115

10.    The Preliminary Order shall be binding upon the defendant and the

successors, administrators, heirs, assigns and transferees of the defendant, and shall survive

the bankruptcy of any of them.

11.    This Preliminary Order shall be binding only upon the Court "so

ordering" the Order.

12.    The Court shall retain jurisdiction over this action to enforce

compliance with the terms of this Preliminary Order, and to amend it as necessary, pursuant

to Fed. R. Crim. P. 32.2(e).

13.    The Clerk of the Court is directed to send, by inter-office mail three (3)

certified copies of this executed Preliminary Order to the United States Attorney's Office,

Eastern District of New York, Attn: FSA Paralegal, Yvette Ramos, 271-A Cadman Plaza

East, Brooklyn, New York 11201.

Dated: Brooklyn, New York
       AUG - 8 2018

SO ORDERED:

/s/ USDJ ERIC N. VITALIANO
HONORABLE ERIC N. VITALIANO
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF NEW YORK

United States v. Jose Rodriguez, 15-CR-576 (ENV)
Preliminary Order of Forfeiture
Page 5

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
| | ) | ss.: | **BY MAIL** |
| COUNTY OF NEW YORK | ) | | |

      I, Kadeesha Marston, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age upon my oath despose and say that:

      **On July 24, 2019**

deponent served the within: **Appendix**

      **upon:**

**Jose Rodriguez**
**Register No. 50398-053**
**USP Hazelton**
**P.O. Box 2000**
**Bruceton Mills, WV 26525**

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. Filing and service were performed by direction of counsel.

**Sworn to before me on**

/s/Marianna Iannotta

                                    **/s/Kadeesha Marston**

      **Marianna Iannotta**
    Notary Public State of New York
      No. 01IA6285846
    Qualified in Nassau County           **Job# 289794**
Commission Expires July 15, 2021