# 19-0631-cr

# United States Court of Appeals
### *for the*
## Second Circuit

---

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOSE CRESPO, AKA Santana, AKA San, RAY JOHNSON, AKA Moreno,
AKA Spoon, JERMAINE STEPHENSON, AKA Half, JOSE PEREZ,
ISMAEL DEVALLE, AKA Ish, MIRIAM GAITHER, GRACE JAEN,
AKA Gracie, AKA Graciela,

*Defendants,*

JOSE RODRIGUEZ, AKA Lazaro,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT
### Pursuant to *Anders v. California*, 386 U.S. 738 (1967)

DANIEL S. NOOTER, ESQ.
*Attorney for Defendant-Appellant*
1380 Monroe Street, NW, # 427
Washington, DC 20010
(202) 215-0512

# TABLE OF CONTENTS

Table of Authorities ................................................................... ii

Jurisdictional Statement ...............................................................1

Statement of the Issue ...................................................................1

Statement of Facts and of the Case ............................................1

Summary of the Argument...........................................................15

Argument

HAVING FULLY CONSIDERED THE RECORD BELOW,
UNDERSIGNED COUNSEL CANNOT IDENTIFY AN ARGUABLY
MERITORIOUS ISSUE TO RAISE ON APPEAL, AND THUS
RESPECTFULLY MOVES TO WITHDRAW AS COUNSEL............................16

    A. In light of the district court's Rule 11 colloquy and this Court's
       precedent, there is no non-frivolous basis undersigned counsel can
       identify to challenge the enforceability of the appeal-waiver
       provision. ...............................................................................19

    B. Any ineffective-assistance-of-counsel claims that survive the
       appeal waiver must be raised in a separate habeas proceeding. .............21

Conclusion ...................................................................................31

Certificate of Compliance ...........................................................32

## TABLE OF AUTHORITIES

Cases

*Anders v. California*,
    386 U.S. 738 (1967)................................................................................*passim*

*Boria v. Keane*,
    99 F.3d 492 (2d Cir. 1996) ............................................................23

*Ellerby v. United States*,
    187 F.3d 257 (2d Cir. 1998) ..........................................................21

*McCarthy v. United States*,
    394 U.S. 459 (1969)......................................................................19

*Rompilla v. Beard*,
    545 U.S. 374 (2005)......................................................................23

*Sanford v. United States,*
    841 F.3d 578 (2d Cir. 2016) ...................................................18, 21

*Strickland v. Washington*,
    466 U.S. 668 (1984)................................................................*passim*

*United States v. Burnett*,
    989 F.2d 100 (2d Cir. 1993) ..........................................................17

*United States v. Gomez-Perez*,
    215 F.3d 315 (2d. Cir. 2000) ...................................................18–19

*United States v. Goodman*,
    165 F.3d 169 (2d Cir. 1999) ..........................................................18

*United States v. Hernandez*,
    242 F.3d 110 (2d Cir. 2001) ..........................................................18

*United States v. Ibrahim*,
    62 F.3d 72 (2d Cir. 1995) ..............................................................18

*United States v. Kaid*,
    241 Fed. Appx. 747 (2d Cir. 2007) (summary order) .................................. 30

*United States v. Leono*,
    215 F.3d 253 (2d Cir. 2000) .........................................................................21

*United States v. Lewis*,
    386 F.3d 475 (2d Cir. 2004) .........................................................................28

*United States v. Lloyd*,
    901 F.3d 111 (2d Cir. 2018) .........................................................................18

*United States v. Lutchman*,
    910 F.3d 33 (2d Cir. 2018) ....................................................................18–20

*United States v. Oladimeji*,
    463 F.3d 152 (2d Cir. 2006) .........................................................................21

*United States v. Rose*,
    496 F.3d 209 (2d Cir. 2007) ....................................................................... 30

*United States v. Rossillo*,
    853 F.2d 1062 (2d Cir. 1988) .......................................................................19

*United States v. Salvador*, 98-cr-484,
    2006 U.S. Dist. LEXIS 49543 (S.D.N.Y. July 19, 2006)...................... 18–29

Statutes and Rules

18 U.S.C. § 922 ....................................................................................................2

18 U.S.C. § 924 .................................................................................................2, 4

18 U.S.C. § 3006A ..............................................................................................2

18 U.S.C. § 3231 .................................................................................................1

21 U.S.C. § 841 ................................................................................................2, 3

21 U.S.C. § 846 ................................................................................2

28 U.S.C. § 1291 .............................................................................1

Fed. R. Crim P. 11 ....................................................................*passim*

U.S.S.G. § 2D1.1 ......................................................................*passim*

U.S.S.G. § 3B1.1 ...............................................................4, 23, 25

U.S.S.G. § 3B1.4 ......................................................................*passim*

U.S.S.G. § 3E1.1 ..................................................................5, 12

## JURISDICTIONAL STATEMENT

Defendant-Appellant Jose Rodriguez appeals the judgment announced on February 22, 2019, and filed on March 13, 2019, by the Honorable Eric N. Vitaliano of the United States District Court for the Eastern District of New York. Appendix ("A") at 103.  The District Court had jurisdiction under 18 U.S.C. § 3231.  Appellant filed timely a notice of appeal on March 4, 2019.  (A 102.)  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

WHETHER there exists an arguably meritorious basis in the district-court record to support a non-frivolous argument for appellate relief.  *See Anders v. California*, 386 U.S. 738, 744 (1967).

## STATEMENT OF FACTS AND OF THE CASE

Defendant-appellant Jose Rodriguez appeals the judgments imposed against him in case number 15-cr-576, over which the Honorable Eric N. Vitaliano presided.

On November 12, 2015, Mr. Rodriguez and seven codefendants were charged in a twelve-count indictment alleging various federal narcotics and firearms offenses. (A 8–15.)  In particular, Mr. Rodriguez was named as a defendant in ten of the twelve counts, as follows:

<u>Count One</u>, charging Mr. Rodriguez with conspiring to distribute and to possess with the intent to distribute marijuana, heroin, and cocaine, including at least one kilogram of a substance involving heroin (A 8–9);[1]

<u>Count Two</u>, charging Mr. Rodriguez with possessing and brandishing a firearm in connection with a drug trafficking crime (A 9–10);[2]

<u>Count Three</u>, charging Mr. Rodriguez with illegally dealing in firearms (A 10);[3] and

<u>Counts Four through Ten</u>, charging Mr. Rodriguez with seven individual instances of being a felon in possession of firearms and ammunition (A 10–11).[4]

The indictment also included notice of the government's intention to seek a criminal forfeiture award.  (A 12–14.)  At an arraignment held November 19, 2015, the district court appointed Lloyd Epstein to represent Mr. Rodriguez, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.  (A 3.)  Mr. Rodriguez pleaded not guilty to each of the charges in the indictment and was ordered detained pending trial.  (A 3.)

On January 20, 2017, Mr. Rodriguez entered a guilty plea pursuant to a plea agreement with the government, several terms of which are germane to the issues presented in this brief.  (A 16–26.)  Under the terms of the plea agreement, Mr. Rodriguez agreed to plead guilty to two counts of the indictment: a lesser-included

---

[1] *See* 21 U.S.C. §§ 841(b)(1)(A)(i); 841(b)(1)(B)(iii); 841(b)(1)(C), (D); and 846.

[2] *See* 18 U.S.C. §§ 924(c)(1)(A)(i), (ii).

[3] *See* 18 U.S.C. §§ 922(a)(1)(A), (D).

[4] *See* 18 U.S.C. § 922(g)(1).

version of the narcotics conspiracy charged in Count One; and the count of using and brandishing a firearm in connection with a drug trafficking offense charged in Count Two.  (A 16–17.)  The narcotics conspiracy originally charged in the indictment included a narcotics-quantity element of 1 kilogram or more of a substance containing heroin, an offense which carries a 10-year mandatory minimum term of incarceration.  *See* 21 U.S.C. § 841(b)(1)(A)(i).  By pleading guilty to the lesser included charge offered in the plea agreement, however, the mandatory minimum was reduced from 10 years to 5 years.  *See* 21 U.S.C. § 841(b)(1)(B).[5]  As part of the plea agreement, Mr. Rodriguez also stipulated both that he had discharged a firearm on or about August 12, 2015 "in the direction of an individual with whom the defendant had a dispute over a car," and that in the same month, he had directed a coconspirator to discharge a firearm at individuals driving in a car, and that the coconspirator had proceeded to do so.  (A 19–20.)  Mr. Rodriguez also agreed to the forfeiture of certain enumerated property (mostly firearms) involved in the offenses of conviction.  (A 21–25.)

The government, in return, agreed not to prosecute Mr. Rodriguez for offenses relating to the narcotics and firearms offenses identified in the indictment, nor for the August 2015 offenses relating to discharging the firearm, and agreed to move to dismiss the remaining counts of the indictment with prejudice.  (A 20–21.)

---

[5] In addition, the statutory maximum penalty was reduced from life to 40 years. *Compare* 21 U.S.C. § 841(b)(1)(A) *with* 21 U.S.C. § 841(b)(1)(B).

The government further agreed not to seek an upward departure from the applicable Guidelines range, nor to take any position regarding where in the Guidelines range Mr. Rodriguez's sentence should fall.  (A 21.)

The plea agreement also included both a Guidelines stipulation and an appeal-waiver provision.  With respect to the former, the plea agreement estimated Mr. Rodriguez's base offense level on Count One to be 30, using the drug-quantity table incorporated at section 2D1.1(c) of the Guidelines and estimating a drug quantity of between 1 and 3 kilograms of heroin.  *See* U.S.S.G. § 2D1.1(c)(5). (A 18.)  The Guidelines estimate also included two enhancements to the base offense-level: a 4-level role enhancement under U.S.S.G. § 3B1.1(a) for being a "leader or organizer"; and a 2-level enhancement under several subsections of U.S.S.G. § 2D1.1(b)(15) (2016), chiefly for the involvement of a minor in the offense.[6]  (A 18.)  These enhancements resulted in a modified offense-level estimate of 36, subject to a reduction of up to three levels for acceptance of responsibility.  (A 18–19.)  The plea agreement also included an estimate of an 84-month consecutive sentence on Count Two, the § 924(c) count.  (A 18.)  Mr. Rodriguez agreed to stipulate to the Guidelines calculation in the plea agreement and not to challenge the drug type and quantity set forth in the lab reports.  (A 19.)

---

[6] This enhancement has been re-codified at U.S.S.G. § 2D1.1(b)*(16)* in the 2018 edition of the Sentencing Guidelines.

The Guidelines estimate assumed that Mr. Rodriguez would fall into Criminal History category III, and thus estimated an effective combined Guidelines range of **272 to 319 months** incarceration if Mr. Rodriguez only were to receive a 2-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), or a **252 to 294 month** range were Mr. Rodriguez to receive the full three-level reduction. *See* U.S.S.G. § 3E1.1(b). (A 19.) Mr. Rodriguez agreed, in relevant part, "not to file an appeal [of] . . . the conviction or sentence in the event that the Court imposes a combined term of imprisonment of 319 months or below." (A 20.) The appeal-waiver provision explicitly exempts ineffective-assistance-of-counsel claims from the scope of the waiver, however, with the agreement specifying that "Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum." (A 20.)

Judge Vitaliano held a plea hearing on January 20, 2017. (A 27 ff.) At the outset of the hearing, Judge Vitaliano ascertained that Mr. Rodriguez was 49 years old and had obtained a 10th grade education. (A 30.) The court also determined that Mr. Rodriguez had not consumed alcohol or narcotic drugs in the prior 24 hours, nor any other medication that would influence his ability to understand the proceedings. (A 31–32.) Mr. Rodriguez explained that he had previously received substance-abuse treatment, including methadone-maintenance treatment during the

time prior to his entering federal custody; but that his mind was presently clear and that he was able to understand the proceedings.  (A 33–34.)  The court also directed questions to Mr. Rodriguez's trial counsel, who confirmed his belief that Mr. Rodriguez was competent to enter a guilty plea.  (A 34.)

Judge Vitaliano proceeded to conduct a colloquy pursuant to Fed. R. Crim. P. 11 to ascertain that Mr. Rodriguez's waiver of trial rights and entry of a guilty plea were knowledgeable and voluntary.[7]  Thus, the court informed Mr. Rodriguez that he had been placed under oath, and that any false answer he provided could thus be used against him in a prosecution for perjury.  *See* Fed. R. Crim. P 11(b)(1)(A).  (A 30.)  The district court further informed Mr. Rodriguez that he was not obligated to plead guilty and that, even if he were guilty, he could maintain his not-guilty plea, exercise his right to a trial, and require the government to satisfy its burden of proof.  *See* Fed. R. Crim. P 11(b)(1)(B).  (A 37.)  The court informed Mr. Rodriguez that if he chose to maintain his not-guilty plea, he would be entitled to a speedy and public jury trial, at which he would have the assistance of counsel.  *See* Fed. R. Crim. P 11(b)(1)(C).  (A 37–38.)  Indeed, the court had previously instructed Mr. Rodriguez that criminal defendants are entitled at every stage in a criminal proceeding to be represented by competent counsel and that

---

[7] Rather than proceed through the Rule 11 colloquy chronologically, undersigned counsel will address each subsection in the order by which it appears in Fed. R. Crim. P. 11(b)(1).

counsel would be appointed for Mr. Rodriguez if he could not afford to pay for one himself. *See* Fed. R. Crim. P 11(b)(1)(D). (A 29.) Mr. Rodriguez indicated that he understood. (A 38.)

The district court proceeded to instruct Mr. Rodriguez about the rights he would have at a trial, including the right to confront and cross-examine the government's witnesses, object to the government's evidence, present his own defenses, call his own witnesses, and compel the presence of witnesses who might not wish to testify. *See* Fed. R. Crim. P 11(b)(1)(E). (A 38.) The court also instructed Mr. Rodriguez that he had the right to testify on his own behalf, but that no one could force him to do so; and that if he chose not to testify, the court would instruct the jury that they could not hold Mr. Rodriguez's silence against him. *See id.* (A 39.) The court instructed Mr. Rodriguez that by pleading guilty he would be waiving these trial rights and, indeed, would be providing the court with the necessary facts to determine that Mr. Rodriguez was guilty of the charged offenses. *See* Fed. R. Crim. P 11(b)(1)(F). (A 39–40.) Mr. Rodriguez indicated that he understood. (A 40.)

The district court reviewed with Mr. Rodriguez the nature of both charges to which he was pleading guilty and ascertained that he had discussed these charges with his attorney and that he understood them. *See* Fed. R. Crim. P 11(b)(1)(G). (A 35–36.) The court proceeded to inform Mr. Rodriguez about the penalties

associated with each of these counts, including the associated mandatory minimums. *See* Fed. R. Crim. P 11(b)(1)(H), (I). (A 45–46, 48–49.) Thus, with respect to the first count, the court informed Mr. Rodriguez that he faced a period of incarceration of a minimum of 5 years and up to 40 years, as well as a mandatory minimum period of 4 years' supervised release, and a fine of up to 5 million dollars. (A 45–46.) With respect to the second count, the court informed Mr. Rodriguez that he faced a mandatory minimum of 7 years consecutive to the sentence on count one, with a maximum sentence of life. (A 48.) The court informed Mr. Rodriguez that there was a maximum of 5 years' supervised release on count two, and that the supervised release term would run concurrently with the supervised release for count one. (A 49.) The court informed Mr. Rodriguez that count two also included the possibility of a fine of up to $250,000. (A 49.)

The district court also reviewed the additional consequences of Mr. Rodriguez's guilty plea, including the applicable forfeiture. *See* Fed. R. Crim. P 11(b)(1)(J). (A 47.) Thus, Mr. Rodriguez was informed that although the government was not seeking a monetary forfeiture in the case, it was seeking the forfeiture of various properties that had been seized from him and that were itemized in the plea agreement. (A 47.) Mr. Rodriguez indicated that he understood. (A 47.) The court also informed Mr. Rodriguez that he would be levying a special assessment of $100 for each count of conviction, for a cumulative

assessment of $200.  *See* Fed. R. Crim. P 11(b)(1)(L).  (A 46–47; 49–50.)  The district court did not instruct Mr. Rodriguez concerning restitution, as there is no restitution issue applicable to the facts of this case.  *See* Fed. R. Crim. P 11(b)(1)(K).  The district court also ascertained that Mr. Rodriguez was an American citizen, but nevertheless explained that defendants who are not U.S. citizens could be subject to immigration consequences.  (A 47–48.)

The district court proceeded to describe the sentencing process to Mr. Rodriguez, including the fact that the court would be obligated to calculate the advisory Sentencing Guidelines.  *See* Fed. R. Crim. P 11(b)(1)(M).  (A 50–51.)  The court explained that, although the Guidelines were merely advisory rather than mandatory, the court was nevertheless required to consider them and "take advice from them."  (A 51.)  The court explained the that the Probation Department would begin the process by preparing a Presentence Investigation Report, which would provide information about the circumstances of the offense conduct as well as Mr. Rodriguez's personal and criminal history.  (A 50–51.)  The court explained that it would ultimately be sentencing Mr. Rodriguez in consideration of both the advisory Guidelines range as well as the sentencing factors enumerated at 18 U.S.C. § 3553(a), which the court briefly described to Mr. Rodriguez.  (A 52–53.)  Mr. Rodriguez indicated that he understood.  (A 53.)

9

The district court also discussed with Mr. Rodriguez the terms of the appeal-waiver provision in his plea agreement. *See* Fed. R. Crim. P 11(b)(1)(N). (A 40–41; 50.) Thus, the district court instructed Mr. Rodriguez that he was waiving the right to appeal the conviction or sentence if Mr. Rodriguez were sentenced to 319 months or lower. (A 40–41.) The court revisited the appeal-waiver issue later in the colloquy, again ascertaining that Mr. Rodriguez understood that he was waiving the right to appeal or collaterally attack his sentence "in any way" if the court were to impose a sentence of 319 months or lower.[8] (A 50.)

The court ascertained from Mr. Rodriguez's counsel that counsel was not aware of any viable legal defense to the charges and that he knew of no reason why Mr. Rodriguez should not plead guilty. (A 55.) The court then asked Mr. Rodriguez how he pleaded as to each of the two counts, and Mr. Rodriguez responded that he pleaded guilty. (A 55–56.) In response to the court's questioning, Mr. Rodriguez affirmed that he was pleading guilty voluntarily and of his own free will, that the plea was not the result of threats or coercion, and that he had not been promised anything in exchange for his plea aside from the terms laid out in the parties' plea agreement. (A 56.) *See* Fed. R. Crim. P 11(b)(2).

---

[8] In fact, this instruction was incorrect; as noted at page 5 above, the appeal-waiver provision explicitly exempts ineffective-assistance-of-counsel claims from the scope of the waiver. (A 20.)

10

The court also inquired as to the factual basis for the plea. *See* Fed. R. Crim. P 11(b)(3). (A 56–59.) To this extent, Mr. Rodriguez admitted that between December 2014 and November 15, he had conspired with others to sell heroin in the Rockaway area of New York, and that the amount of heroin was more than 100 grams. (A 57–58.) Mr. Rodriguez also admitted that he had discharged a firearm to scare people off, and that his doing so was in connection with the narcotics conspiracy he had just admitted to and in the same time and place. (A 58.) The government also noted that Mr. Rodriguez had stipulated to facts regarding the discharge of a weapon in connection with his plea agreement. (A 42, 59.)

Accordingly, the court determined that Mr. Rodriguez's guilty plea was knowing, voluntary, competent, and possessed an adequate factual basis, and thus accepted Mr. Rodriguez's guilty plea. (A 59.)

Following Mr. Rodriguez's plea, the Probation Department prepared a Presentence Investigation Report (PSR), which was circulated to the parties on or about October 3, 2017. (PSR at 1.) The Guidelines estimate in the PSR differed in two notable respects from the parties' estimate in the plea agreement. First, with respect to the offense-level calculation for Count One, the two-point enhancement under U.S.S.G. § 2D1.1(b)(15) (2016) for involving a minor in the offense was eliminated and instead replaced with a 2-level enhancement under U.S.S.G. § 3B1.4 for using or attempting to use a person less than 18 years old to commit the

11

offense.  (PSR at 8.)  Other than changing the basis of this 2-level enhancement for using a minor from being a "specific offense characteristic" to being a "role enhancement," the substitution of the one Guidelines section for the other had no practical effect on Mr. Rodriguez's Guidelines sentencing range.  Accordingly, Probation calculated Mr. Rodriguez's offense level for Count One as 36 — the same as in the plea agreement — and then reduced it to **33**, reflecting a 3-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b).  (PSR at 9; A 19.)

The second change from the estimate in the plea agreement, however, was more significant.  After running Mr. Rodriguez's criminal history, Probation determined that Mr. Rodriguez was liable for 8 criminal history points, placing him in criminal history category IV, rather than III as the parties had estimated in the plea agreement.  (PSR at 9–18.)  Applying an offense-level of 33 and a criminal history category of IV, Probation estimated Mr. Rodriguez's advisory Guidelines range on Count One to be **188 to 235 months**, exclusive of the 84-month (7-year) mandatory consecutive sentence for Count Two.  (PSR at 27–28.)  Accordingly, Mr. Rodriguez's effective Guidelines range for the two counts together was **272 to 319 months**.

The district court conducted a sentencing hearing on February 22, 2019.  (A 62 ff.)  In advance of sentencing, Mr. Rodriguez's attorney filed a sentencing

12

memorandum supported by numerous exhibits, ranging from a letter from Mr.

Rodriguez's daughter, to various medical and psychological records, to a 17-page

psychosocial report and analysis prepared by a mitigation specialist and Board-

certified forensic psychologist, Alan M. Goldstein, Ph.D., PC, which documented

Dr. Goldstein's opinions regarding Mr. Rodriguez's cognitive limitations and

memory deficits. (A 7.) Accordingly, at the outset of the hearing, the parties

engaged in a lengthy colloquy with the court about whether it was necessary to

have a hearing regarding Dr. Goldstein's report and its bearing on any aspect of the

PSR or Mr. Rodriguez's Guidelines calculation. (A 64–76.) Ultimately, the

parties agreed that while these issues were potentially relevant as mitigating

circumstances in determining the sentence, they did not warrant a *Fatico* hearing as

to any aspect of the Guidelines determination. (A 75–76.) Accordingly, counsel

for Mr. Rodriguez indicated that he had had a full opportunity to review the PSR

with Mr. Rodriguez and that there were no objections to the PSR's recitation of the

facts or its calculation of Mr. Rodriguez's Guidelines range. (A 76–77.)

Accordingly, the district court adopted the PSR's finding that Mr. Gonzalez's

offense level was 33 and that he fell into criminal-history category IV,

corresponding to a Guidelines range of **188 to 235 months**. (A 77.)

The district court proceeded to hear arguments from, respectively, Mr.

Gonzalez's counsel (A 78–83); Mr. Gonzalez himself (A 83–84); and the

13

government (A 84–90), prior to announcing the court's sentence and its reasoning behind it. The court began its explanation of the sentence by explaining that it had considered the advisory Sentencing Guidelines range, the sentencing factors enumerated at 18 U.S.C. § 3553(a), the PSR, the submissions by the parties, and the statements they had made at the sentencing hearing. (A 91–92.) The court noted some of the factors it considered "extremely aggravating" in connection with the offense, particularly the use of firearms in connection with the narcotics and the involvement of minor children in the offense conduct. (A 93–94.) On the other side of the analysis, the court identified the Goldstein Report and what it revealed about Mr. Rodriguez's cognitive limitations as mitigating factors that caused the court to reconsider imposing an above-Guidelines sentence. (A 94–95.)

Accordingly, the court explained it was sentencing Mr. Rodriguez to the bottom of the advisory Guidelines range, corresponding to a term of custody of 188 months on Count One and the mandatory-minimum consecutive term of 7 years' incarceration on Count Two. (A 95–96.) The court further ordered a sentence of five years' supervised release on each count, the two special assessments of $100 each, and the forfeiture order set out in the plea agreement. (A 96.) The court explained that it was not imposing a fine as Mr. Rodriguez lacked the ability to pay one. (A 96.) Attorneys for both parties indicated that they had no objections to the imposed sentence. (A 99.) The court instructed Mr.

14

Rodriguez that he had a right to appeal the sentence, subject to the terms of the appeal-waiver provision, and that he could do so *in forma pauperis* if he could not afford to file the appeal himself. (A 100.) Accordingly, Mr. Rodriguez filed a timely notice of appeal on March 4, 2019. (A 102.)

On March 27, 2019, Mr. Rodriguez's district-court counsel filed a motion to be relieved and to have substitute counsel appointed. This Court granted the motion in an order dated March 29, 2019, and appointed undersigned counsel pursuant to the Criminal Justice Act to represent Mr. Rodriguez in the present appeal. As undersigned counsel does not believe there is any meritorious appellate issue that survives Mr. Rodriguez's appeal waiver, however, undersigned counsel respectfully moves to withdraw as counsel and thus submits this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

## SUMMARY OF THE ARGUMENT

Having closely reviewed the record, undersigned counsel does not believe there is a meritorious appellate issue he can raise. As a threshold matter, Mr. Rodriguez agreed to a waiver of his appellate rights in his plea agreement, and undersigned counsel cannot meritoriously assert a basis either to invalidate the appeal waiver or to contest that Mr. Rodriguez's guilty plea was knowing and voluntary, had an appropriate factual predicate, and that the sentence imposed by the district court was procedurally and substantively reasonable.

To the extent Mr. Rodriguez has a meritorious claim that he was denied the effective assistance of counsel by his trial attorney, that claim would survive the appeal-waiver provision in Mr. Rodriguez's plea agreement. Yet the appellate record as it stands provides no factual or legal basis to raise an ineffective-assistance claim on direct appeal. Because I am unaware of any meritorious claim for relief Mr. Rodriguez can raise in this Court, I respectfully move to withdraw as counsel pursuant to *Anders v. California*.

## ARGUMENT

HAVING FULLY CONSIDERED THE RECORD BELOW, UNDERSIGNED COUNSEL CANNOT IDENTIFY AN ARGUABLY MERITORIOUS ISSUE TO RAISE ON APPEAL, AND THUS RESPECTFULLY MOVES TO WITHDRAW AS COUNSEL.

As the Supreme Court has explained, "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*." *See Anders*, 386 U.S. at 744. Accordingly, a criminal defense attorney who, after conscientious examination of the record, identifies no non-frivolous issues to raise on a client's behalf, must accompany a request to withdraw as counsel with "a brief referring to anything in the record that might arguably support the appeal." *See id.* Crucially, an *Anders* brief is not a request that an appellate court uphold a district court's judgment, nor does it "force appointed

16

counsel to brief his case against his client." *See id.* at 745. Rather, the purpose of an *Anders* brief is to assist both the Court and the client in determining whether there may indeed be a potentially meritorious challenge to a district court's judgment. Thus, an *Anders* brief should "induce the [appellate] court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel." *See id.*

In reviewing a defense counsel's *Anders* brief, this Court "must be satisfied that counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal; and . . . in order to permit defense counsel to withdraw, it must be satisfied that defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct." *See United States v. Burnett*, 989 F.2d 100 (2d Cir. 1993).

Where the defendant has executed a waiver of his right to appeal, however, and defense counsel concludes there is no basis for contesting the validity of the waiver, an *Anders* brief generally must only address the limited issues of "whether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent"; "whether it would be against the defendant's interest to contest his plea"; and whether there exist "any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances." *See United States v.*

17

*Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000) (citing *United States v. Ibrahim*, 62 F.3d 72, 74 (2d Cir. 1995)).

Circumstances under which this Court will not enforce an appeal-waiver clause include:

> (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (quoting *Gomez-Perez*, 215 F.3d at 319; internal brackets omitted). Thus, appeal waivers do not bar appellate challenges to the process leading to the plea. *See United States v. Lloyd*, 901 F.3d 111, 118 (2d Cir. 2018); *see also United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (declining to enforce appeal waiver where defendant was challenging the constitutionality of the process by which he waived his appellate rights). Further, this Court will not enforce a plea-waiver provision that is unsupported by consideration. *See United States v. Lutchman*, 910 F.3d 33, 37 (2d Cir. 2018); *see also United States v. Goodman*, 165 F.3d 169, 174 (2d Cir. 1999) (declining to enforce appeal-waiver provision where the defendant "received very little benefit in exchange for her plea of guilty."). In resolving the question of whether a defendant received an adequate benefit in exchange for surrendering his

appellate rights, this Court compares the benefit a defendant received under the terms of a plea agreement with "what he would have gotten by pleading guilty without an agreement." *See Lutchman*, 910 F.3d at 37.

A.  In light of the district court's Rule 11 colloquy and this Court's precedent, there is no non-frivolous basis undersigned counsel can identify to challenge the enforceability of the appeal-waiver provision.

As explained above, Mr. Rodriguez'z plea agreement included a waiver of his right to appeal "the conviction or sentence in the event that the Court imposes a combined term of imprisonment of 319 months or below."  (A 20.)  The district court sentenced Mr. Rodriguez to a term of 188 months incarceration on Count One and a consecutive term of 84 months (7 years) incarceration on Count Two, for a combined term of imprisonment of 272 months.  Thus, Mr. Rodriguez's sentence of incarceration would be covered by the terms of the appeal-waiver provision in the event this Court deems it enforceable.  The threshold question under *Gomez-Perez*, therefore, is whether Mr. Rodriguez's "plea and waiver of appellate rights were knowing, voluntary, and competent."  *See Gomez-Perez*, 215 F.3d at 319.

The primary mechanism for ensuring that a defendant's plea is knowing, voluntary, and competent is the plea colloquy required by Rule 11.  *See, e.g., United States v. Rossillo*, 853 F.2d 1062, 1064–65 (2d Cir. 1988) (quoting *McCarthy v. United States*, 394 U.S. 459, 465 (1969)).  As detailed at pages 6

through 11 of this brief, however, the district court fully advised Mr. Rodriguez in accordance with every section of Rule 11 (aside from the subsection involving restitution, which was inapplicable). Mr. Rodriguez consistently indicated to the district court that he understood the Rule 11 colloquy and the rights he was waiving by pleading guilty, and there is no independent basis in the record from which to contest that the plea was voluntary, competent, and possessed an adequate factual basis. Further, the district court explained the appeal-waiver provision itself to Mr. Rodriguez during the plea colloquy, and Mr. Rodriguez indicated that he understood it. (A 50.) Thus, there is no non-frivolous basis to contest that Mr. Rodriguez's waiver of appellate rights was knowing and voluntary.

Nor is there a basis to argue that the appeal-waiver was unsupported by consideration. *See Lutchman*, 910 F.3d at 37. In exchange for his guilty plea, the government agreed, among other things, to charge Mr. Rodriguez with a lesser-included offense on Count One — which reduced both the statutory minimum and maximum sentences to which Mr. Rodriguez was subject under that count — and further agreed not to charge Mr. Rodriguez with additional firearms offenses (including his discharging of the firearm), other than the brandishing charge in Count Two. (A 20–21.) Further, the government agreed to dismiss Counts Three through Ten of the indictment. Undersigned counsel thus cannot non-frivolously

argue that Mr. Rodriguez's waiver of his appellate rights is unenforceable for lack of consideration.

Finally, there is no basis in the record to contest the appeal-waiver under any of the other factors identified in *Sanford*. In particular, nothing in the record indicates that the imposed sentence reflected a racial or ethnic bias; nor did the government breach its obligations under the plea agreement; and the district court provided a detailed and coherent explanation for the sentence imposed. *See Sanford,* 841 F.3d at 580. Accordingly, undersigned counsel cannot identify a nonfrivolous basis in the record through which to contest the validity or applicability of the appeal-waiver provision in Mr. Rodriguez's plea agreement.

## B. Any ineffective-assistance-of-counsel claims that survive the appeal waiver must be raised in a separate habeas proceeding.

The explicit terms of the appeal-waiver provision preserve Mr. Rodriguez's right to assert claims of ineffective assistance of counsel. (A 20.) *Accord United States v. Oladimeji*, 463 F.3d 152, 155 (2d Cir. 2006) ("Ineffective assistance with respect to an appeal waiver, if proven, would cast doubt on enforceability of the appeal-waiver provision."). Further, this Court has the authority to decide an ineffective-assistance claim on direct appeal where the record underlying the issue is adequately developed. *See, e.g., United States v. Leono*, 215 F.3d 253, 256 (2d Cir. 2000); *Ellerby v. United States*, 187 F.3d 257, 259 (2d Cir. 1998) (ineffective-

21

assistance claims may be considered on direct review if the defendant has new appellate counsel and the claims are not frivolous).  Accordingly, if the appellate record were sufficient to support an ineffective-assistance claim, that claim could be asserted in the present appeal notwithstanding the operation of the appeal-waiver provision.

Indeed, it is undersigned counsel's understanding that Mr. Rodriguez may wish to assert that his district-court counsel was ineffective with respect to the calculation of Mr. Rodriguez's Guidelines sentencing range, particularly with respect to the enhancement under U.S.S.G. § 3B1.4 for using a minor in the commission of the offense.  If counsel failed to object to a Guidelines enhancement that is clearly erroneous from the face of the appellate record, counsel's failure to object may raise an inference of ineffective assistance sufficiently meritorious to pursue on direct appeal.  As detailed below, however, undersigned counsel does not believe the present record supports a claim that there was any clearly-erroneous Guidelines enhancement to which Mr. Rodriguez's district-court counsel failed to object.

Claims of ineffective assistance of counsel are generally considered under the familiar two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under *Strickland*, an appellant must first establish his attorney's performance was so deficient that it "fell below an objective standard of

22

reasonableness." *See Strickland*, 466 U.S. at 688. This inquiry examines the reasonableness of trial counsel's actions under "all the circumstances," as viewed from the perspective of trial counsel at the time investigative decisions were made. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005); *Strickland*, 466 U.S. at 689. Further, in applying this test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted*); but see Boria v. Keane*, 99 F.3d 492, 498 (2d Cir. 1996) (habeas petition granted, as counsel's failure to provide advice to client is not a "strategic decision"). Additionally, under the second prong of the Strickland test, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at. at 694.

There are three aspects of Mr. Rodriguez's offense-level calculation to which his district court counsel could conceivably have objected: the drug quantity calculation under U.S.S.G. § 2D1.1(c); the role enhancement for being an "organizer or leader" pursuant to U.S.S.G. § 3B1.1(a); and the role enhancement

for involving a minor in the offense, pursuant to U.S.S.G. § 3B1.4. As explained below, there is an insufficient basis in the record to raise a *Strickland* claim as to any of these three aspects of the Guidelines calculation.

With respect to the drug quantity, there is no basis in the record from which to argue that the one to three kilogram quantity of heroin to which Mr. Rodriguez stipulated in his plea agreement and to which Probation held him accountable was clearly erroneous. (A 18; PSR at 6.) Rather, the PSR's explanation of the offense conduct describes a narcotics organization that was obtaining wholesale quantities of narcotics and packaging them for sale to both mid-level drug sellers and individual end-users. (PSR at 5.) It describes the sale of 4 gram "sleeves" of heroin that were sold to wholesale customers for $500 to $600 each, as well as wiretapped conversations in which Rodriguez stated that he was earning $10,000 to $20,000 per week selling narcotics. (PSR at 5.) Considering that the conspiracy to which Mr. Rodriguez pleaded guilty was alleged to have run from December 2014 through November 2015 (A 8), there is a reasonable factual basis to support a finding that Mr. Rodriguez was responsible for more than 1 kilogram of heroin over the course of the conspiracy, and undersigned counsel can identify nothing in the record to suggest that Mr. Rodriguez's district court counsel committed professional error in failing to object to this quantity.

24

Regarding Mr. Rodriguez's leadership role, the Guidelines state that a 4-level enhancement is applicable if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *See* U.S.S.G. § § 3B1.1(a). In determining a defendant's leadership role, a court is to consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See id.*, Application Note 4.

Mr. Rodriguez stipulated to the applicability of this enhancement in his plea agreement, and the present record does not provide a legal or factual basis from which to argue that the enhancement is so clearly inapplicable as to infer that Mr. Rodriguez's trial counsel was ineffective in failing to object. (A 18.) As a threshold matter, counsel could not reasonably challenge that the conspiracy involved five or more members, as the indictment charged Mr. Rodriguez and *seven* codefendants with participation in the narcotics conspiracy, and all seven codefendants also pleaded guilty to the narcotics conspiracy charged in Count One. Further, the government's investigation of the offense included a 30-day wiretap of Mr. Rodriguez's cell phone, and these recorded conversations provide a reasonable

25

factual basis from which Probation could conclude that Mr. Rodriguez was exercising decision-making authority over other members of the conspiracy.[9] (PSR at 4.)  To be clear, undersigned counsel takes no position as to whether the enhancement was correctly applied, or whether Mr. Rodriguez might be successful in the context of a 28 U.S.C. § 2255 proceeding that alleged additional relevant facts.  From the basis of the present record, however, undersigned counsel cannot assert a good-faith basis to claim that Mr. Rodriguez's district court counsel was ineffective in failing to object to the leadership enhancement.

Finally, undersigned counsel cannot raise a colorable *Strickland* claim concerning trial counsel's failure to object to the application of a role enhancement, pursuant to U.S.S.G. § 3B1.4, for involving a minor in the offense. This Guideline applies a 2-level enhancement if "the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense."  *See* U.S.S.G. § 3B1.4. The Guideline's application notes explain that "using or attempting to use" a minor includes "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting."  *See id.*, Application Note 1.  These notes further explain that the § 3B1.4 enhancement is *not* to be applied cumulatively

---

[9] Indeed, in the colloquy during Mr. Rodriguez's sentencing hearing regarding whether a *Fatico* hearing was necessary, the attorney for the government offered to play these recordings for the district court were there any question regarding Mr. Rodriguez's exercise of a leadership role.  (A 71.)

with a specific-offense-characteristic enhancement for involving a minor in the offense. *See id.*, Application Note 2. As explained on page 11 above, however, Probation applied the § 3B1.4 role enhancement as a *replacement* for the two-point specific-offense-characteristic enhancement under U.S.S.G. § 2D1.1(b)(15) (2016) that the parties had originally stipulated to in the plea agreement, and thus there was no cumulative application of the enhancement. (A 18.)

The PSR identified two putative factual bases for the imposition of the § 3B1.4 enhancement. The primary basis identified by Probation was that in a recorded phone conversation between Mr. Rodriguez and a coconspirator, Jose Crespo, Crespo informed Mr. Rodriguez that he was sending the teenaged daughter of a third coconspirator into Mr. Rodriguez's room to retrieve a bag of narcotics, since Crespo did not want to enter the room himself. (PSR at 5.) As a second basis for the enhancement, the PSR referenced a video recording made by a cooperating witness in which Mr. Rodriguez is counting cash, which he then hands to a teenaged girl with instructions to put it into a safe. (PSR at 5, footnote 1.) Probation implies, but does not specifically allege, that this cash represented the proceeds from narcotics sales.

While these two cited instances of a minor's involvement in the offense conduct are relatively tangential to the core conduct of the narcotics charge, they nevertheless are probably sufficient under this Court's caselaw to serve as valid

predicates for the § 3B1.4 enhancement.  Thus, even though it was Crespo, rather than Rodriguez, who directed the teenager to retrieve the narcotics from Rodriguez's room, the fact that Crespo explicitly *informed* Rodriguez that he was planning to use the minor for this purpose means that Mr. Rodriguez cannot reasonably dispute that the involvement of the minor in the offense was foreseeable to him.  *See United States v. Lewis*, 386 F.3d 475, 480 (2d Cir. 2004) (holding that an enhancement under § 3B1.4 is properly applied to co-conspirators in a narcotics distribution conspiracy if those co-conspirators "could have reasonably foreseen that minors would be used by others in the conspiracy.").  *See id.* at 480.  Accordingly, the Court in *Lewis* upheld the application of a § 3B1.4 enhancement for a defendant named Harris on the basis that he could have reasonably foreseen that minors would be used by his co-conspirators:

> Harris was an organizer and leader of the drug distribution ring in a public housing project.  Even though he did not request that a minor be recruited or even know that this had occurred, he should have anticipated that co-conspirators under his supervision would recruit a minor because they were operating in an environment where adults and minors lived together in close proximity.

*See id.*

At least one district court case, however, reached a contrary conclusion.  *See United States v. Salvador*, 98-cr-484, 2006 U.S. Dist. LEXIS 49543, at *12–13 (S.D.N.Y. July 19, 2006).  In *Salvador*, the court held that a § 3B1.4 enhancement should ***not*** apply where a minor was used by a co-defendant in the narcotics

conspiracy, but where the evidence otherwise demonstrated that the minor's activities were all performed "behind [the] defendant's back," and where there was no evidence that the defendant knew anything about the minor's involvement. *See id.* Thus, the district court in *Salvator* explained that it "does not find that the government has shown by a preponderance of the evidence that defendant knew or should have foreseen that [the minor] worked for the conspiracy." *See id.* at *13. Insofar as Crespo had explicitly told Rodriguez that he intended to use the minor to retrieve the drugs in this case, however, undersigned counsel cannot reasonably assert either that Mr. Rodriguez's counsel's actions fell below a reasonable professional standard in failing to object to the enhancement, or that it is reasonably likely the outcome of the proceeding would have been different had the objection been raised. *See Strickland*, 466 U.S. at 688, 694. Rather, Judge Vitaliano opined at the sentencing hearing that it was "an extremely aggravating circumstance that as bad as all of that is, under the leadership of Mr. Rodriguez, that children would be dragged into the process, innocent kids becoming part of how this crime network operated in Far Rockaway." (A 93.) Accordingly, applying *Strickland*'s presumption that "under the circumstances, the challenged action might be considered sound trial strategy," district court counsel might reasonably have determined it was adverse to Mr. Rodriguez's interests to have an evidentiary hearing on the use of minors in the offense, which would have little

chance of success as a legal matter and would only draw additional attention to damning fact that the district court found to constitute "an extremely aggravating circumstance."

Finally, even though the minor's involvement in the two instances cited in the PSR is less extensive than in many cases where this Court has upheld the § 3B1.4 enhancement, *see, e.g., United States v. Rose*, 496 F.3d 209, 213–14 (2d Cir. 2007), this Court has sometimes upheld the enhancement for similarly "minor" conduct.  For example, in *United States v. Kaid*, 241 Fed. Appx. 747, 752–53 (2d Cir. 2007) (summary order), a panel of this Court upheld the imposition of a § 3B1.4 enhancement when the minor had merely helped his father load boxes of untaxed cigarettes into the back of a truck.  As this conduct is not dissimilar from the conduct of fetching a bag of narcotics from a room or of putting narcotics proceeds into a safe, undersigned counsel cannot conclude that the district court's application of the § 3B1.4 enhancement in this case was so clearly erroneous as to raise an inference of ineffective-assistance against Mr. Rodriguez's district court counsel.

All of this is not to express any conclusion about whether or not an ineffective-assistance claim might ultimately be successful against Mr. Rodriguez's district court counsel, were such a claim to be presented in an appropriately raised § 2255 motion, and were Mr. Rodriguez to allege such

additional facts as necessary to support the claim.  But on the present record,

undersigned counsel cannot identify a good-faith basis to present such an

ineffective-assistance claim, and thus respectfully seeks leave to withdraw as

counsel.

## CONCLUSION

For the foregoing reasons, undersigned counsel respectfully moves to

withdraw as counsel for Mr. Rodriguez.

Respectfully submitted,

<u>Date</u>:  July 24, 2019          _/s/ Daniel S. Nooter_____
                                     Daniel S. Nooter, Esq.
                                     *Attorney for Defendant-Appellant*
                                     1380 Monroe Street, N.W., #427
                                     Washington, DC  20010
                                     (202) 215-0512

## CERTIFICATE OF COMPLIANCE

Undersigned counsel hereby certifies:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,350 words, excluding the parts of the brief excepted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

 /s/ Daniel S. Nooter_____
Daniel S. Nooter, Esq.

STATE OF NEW YORK    )                            **AFFIDAVIT OF SERVICE**
                                  )      ss.:                **BY MAIL**
COUNTY OF NEW YORK    )

       I, Kadeesha Marston, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age upon my oath despose and say that:

       **On July 24, 2019**

deponent served the within:  **Brief For Defendant-Appellant**
                              **Pursuant to Anders v. California, 386 U.S. 738 (1967)**

       **upon:**

**Jose Rodriguez**
**Register No. 50398-053**
**USP Hazelton**
**P.O. Box 2000**
**Bruceton Mills, WV 26525**

the address(es) designated by said attorney(s) for that purpose by depositing  **1**  true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

This document was also submitted via the CM/ECF Case Filing System. Filing and service were performed by direction of counsel.

**Sworn to before me on**


<u>/s/Marianna Iannotta</u>

                                        **/s/Kadeesha Marston**

      **Marianna Iannotta**
    Notary Public State of New York
       No. 01IA6285846              **Job# 289794**
     Qualified in Nassau County
Commission Expires July 15, 2021